. IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW-YORK.

IN MAY TERM, 1812, IN THE THIRTY-SIXTH YEAR OF OUR
INDEPENDENCE.

---

TALLMADGE AND OTHERS *against* RICHMOND, SHERIFF, &c.

. THIS was an action of *debt*. The declaration contained two counts; one general, for the escape of one *Edward Brockway*, a prisoner in execution at the suit of the plaintiffs, from the custody of the defendant, sheriff of the county of *Cayuga ;* and the other special, stating the execution, &c. and the giving bail for the liberties of the gaol, and the escape from thence. The defendant pleaded *nil debet*, and subjoined a notice that he would prove a recaption on fresh pursuit, before action brought, also a voluntary return, before action brought, and also that after the alleged escape of *Brockway*, he was discharged by the court of common pleas of *Cayuga* county, pursuant to the *act for the relief of debtors, with respect to the imprisonment of their persons ;* and that the plaintiffs, knowing of the escape, appeared by their attorneys, and opposed the discharge of *Brockway*.

The execution was endorsed for 2,640 dollars, and was returned and filed on the 26th *January*, 1808, by *T. C. Dewitt*, the former sheriff of the county.

Where an indenture of assignment of prisoners from the old to the new sheriff, specified a suit, by the title of " *Tallmadge, Smith & Co.* v. *Edw. Brockway ;*" this was held sufficiently certain, without giving the names of all the plaintiffs at large: it was a sufficient notice to the new sheriff of the execution against the prisoner. Where the bond taken by a new sheriff for his security on granting

the liberties of the gaol to a prisoner in execution, stated the amount of the execution, for which he was in custody, it was held conclusive as to the fact, so that the sheriff, in an action, afterwards, against him for an escape, could not allege that it was not the true sum, or that he had not notice of the true sum, before the escape.

The plaintiff offered to prove, by parol, that *Brockway* was on the gaol liberties when the late sheriff went out of office, in March, 1808, and remained on the limits at the time the defendant came into office, and was in his custody, in execution, at the suit of the plaintiffs. This evidence was objected to, but admitted by the judge. *Dewitt*, the former sheriff, who had been released by the plaintiffs, was sworn as a witness, and testified that *Brockway*, on the 1st *January*, 1808, was committed to prison on execution, at the suit of the plaintiffs; and that since the defendant succeeded to the office of sheriff, which was in the autumn of 1808, he admitted that *Brockway* was in his custody on the same execution, at the suit of the plaintiffs; the witness had seen *Brockway* on the liberties of the gaol; and, afterwards, saw him, several times, more than three miles without the liberties. The witness did not recollect that he mentioned to the defendant, the names of all the plaintiffs in the execution, but spoke of it as an execution in favour of *Tallmadge, Smith & Co.* but he never had any other execution against *Brockway*, at the suit of the plaintiffs, or either of them. The county was surrendered to the defendant by one of the deputies of the old sheriff, who had a blank assignment from him, and he was not present at the time.

The indenture produced was dated the 3d *March*, 1808, and stated that *Dewitt*, the late sheriff, had delivered to the defendant, the now sheriff, &c. the bodies of the several persons therein mentioned, with the causes, enumerating them, among which was one entitled " *Tallmadge, Smith & Co.* v. *Edward Brockway*," on *ca. sa.* for 260 dollars and 40 cents.

A bond, dated 31st *March*, 1809, given to the defendant, as security for granting the liberties of the gaol to *Brockway*, was produced, in which was mentioned the execution, and the sum for which he was in custody, as stated by the plaintiffs, except that the name of one of the plaintiffs was omitted. The defendant had previously taken a bond for the same purpose, but was dissatisfied with the security. This bond he did not produce at the trial, though notice had been given to him by the plaintiffs, for that purpose.

The defendant offered to prove, that *Brockway* was in his custody when the suit was commenced, and that if he had gone beyond the liberties, he had voluntarily returned; but the evidence

was objected to, and overruled by the judge; because the defendant had not accompanied his plea with an affidavit, that the escape was without his knowledge or consent; and a voluntary return before suit brought would not, in this case, constitute a defence. The defendant's counsel was about to address the jury, but was told by the judge, that there were no doubtful facts for the jury to decide; and the counsel declined summing up. The judge charged the jury, that there was sufficient evidence that *Brockway* had been in custody of the defendant, in execution, at 'the suit of the plaintiffs, for the amount endorsed on the execution produced; and that the plaintiffs were entitled to recover the sum of 2,677 dollars and 24 cents, being the amount of the debt, with the sheriff's fees on the commitment: and the jury gave a verdict for the plaintiffs accordingly.

A motion was made to set aside the verdict, and for a new trial: 1. For the admission of improper testimony; 2. For the misdirection of the judge.

*Richardson*, for the defendant. It ought to have been shown that the prisoner had come legally into the custody of the defendant. The old sheriff must deliver over, by indenture, to the new sheriff, all the prisoners, with their respective executions; otherwise, it is an escape in him, and the new sheriff is not chargeable.[*]

The form of the writ of discharge to the old sheriff, given by the statute, expressly recites such a delivery by indenture;[†] and it is the uniform practice founded on the rule of common law.

No indenture or delivery of the prisoner was shown, though the plaintiffs made such evidence necessary, by averring such a delivery in their declaration. The indenture produced does not support the averment; for the title of the cause, and the sum for which the defendant was in execution, are different.

The jury, not the judge, are to determine the fact of the arrest, and of the delivery over of the prisoner to the new sheriff.

Again, no bond for the liberties was shown; for the bond produced was illegal and void. It was for more than double the sum in the execution, including poundage and all other charges. The bond should be in the very cause, and existing at the time of the escape.

*Cady*, contra. An assignment by indenture, of prisoners, by

**Margin notes:**

NEW-YORK, May, 1812.

TALLMADGE v. RICHMOND.

[*] *Westby v. Skinner*, Cro. Eliz. 365. 3 Co. 71.

[†] Sess. 24. c. 28. s. 1. 7 *Johns. Rep.* 137. 4 *Johns. Rep.* 469.

NEWYORK,
May, 1812.
TALLMADGE
v.
RICHMOND.
* 2 Bac. Abr.
Escape, n.
242.   4 Bac.
Abr.  445.  n.
6 Mod.  183.
3  Com.  Dig.
289. (D.)
the old to the new sheriff, is not necessary.* The old sheriff may deliver the prisoners by *parol ;* and an indenture is not requisite, unless the new sheriff requires it.

The creditor is not bound to know that there is an assignment, or whether it is in due form or not.

The testimony of *Dewitt,* the former sheriff, was corroborated by the documents produced, and there was no question as to his credit. The bond was produced in evidence to show that the defendant considered *Brockway* a prisoner, in his custody, and treated him as such. If the bond was for more than double the amount of the execution, yet the defendant cannot take advantage of such an objection.

The name of *Tallmadge, Smith & Co.* was sufficiently descriptive of the plaintiffs ; and the bond having been accepted by the defendant in that form, he cannot now object any want of certainty.

Should it be said that there is a variance between the allegation in the declaration, as to the delivery over to the new sheriff, and the description of the cause, as it appears in the assignment, it may be answered that the assignment was not offered or called for by the plaintiffs; but was voluntarily produced by the defendant.

*Rodman,* in reply, observed, that sheriffs were favoured in law, and were not to be made liable, unless clearly and strictly responsible.

It is a general principle, that prisoners may be received *on view,* by parol; but it must be in the gaol, and *on view* by the new sheriff.† There must be an assignment, if he require it. If a prisoner within the walls of the gaol is not included in the assignment, it is an escape. A mistaken or false name or title of the suit, amounts to an escape.

† Dalton's
Sheriff, 14 to
20. and pas-
sim.

Again, there is an interval of seven days between the time of delivery over, alleged in the declaration, and the day of assignment or delivery, as proved at the trial, and during that interval there was an escape.

The new sheriff takes the prisoners by parol, at his peril. But an indenture was required in this case, and the names of the plaintiffs ought to have been correctly stated, otherwise it could not be known in what suit the prisoner was in custody.

The jury ought to have been allowed to decide on the existence of the bond, as a substantive fact ; and on the credit of *Dewitt,* the old sheriff, the principal witness for the plaintiffs.

KENT, Ch. J. delivered the opinion of the court. This is a motion for a new trial, for the admission of improper testimony, and for misdirection of the judge.

That *Brockway* escaped after the defendant took charge of the county and of the prisoner, was proved by several witnesses. The only question that can arise upon the case, is, shall the defendant be chargeable for that escape? Whether he had given the liberties of the gaol to *Brockway*, with or without taking security, was not a material fact; for in no respect, or in any view, is the defendant entitled to avail himself of a return or recaption before suit brought, since he has not accompanied his plea with the affidavit required by the statute, that the escape was without his privity or knowledge. (*Laws*, vol. 1. p. 213. sess. 24. c. 28. s. 22.) The single point is, was *Brockway*, when he escaped, the defendant's prisoner at the suit of the plaintiffs. He had been assigned over by the former sheriff, by indenture, and the suit of the present plaintiffs was specified under the title of *Tallmadge, Smith & Co.* v. *Edward Brockway*. This title of the cause was well enough, as it necessarily imported that the names of the plaintiffs to the *ca. sa.* were not given at large, and it does not appear that the defendant made any objection. It was notice that *Brockway* was in execution in a suit in which such a firm were plaintiffs, and it answered the purpose intended by the rule of law. All that the books say is, that the old sheriff, when he delivers over the prisoner, must give notice of all the executions against him. The rule does not require that this notice should contain the accuracy and precision requisite in special pleading. It must be construed according to the reason of the thing. If the indenture had said that *Brockway* was a prisoner on an execution issued at the suit of *Benjamin Tallmadge and others*, it would have been sufficient. It let the new sheriff know the fact of such an execution on which he was to hold the prisoner. If every particular was to be required, then the test and return of the execution, the sum endorsed, and the interest that was to be collected, and the attorney who issued it, ought all to be mentioned. To require such a nicety in these cases, would be productive of great public inconvenience. In *Westby's Case*, (3 *Co.* 71. b. *Cro. Eliz.* 365. *Moore*, 688.) the old sheriff, in assigning over a prisoner, against whom he had two executions, omitted to mention one of them, and the prisoner having escaped, the court held that the old, and not the new sheriff, was responsible for the escape, as to

the omitted execution. But in that case it was agreed at the bar, and, according to the report of the case in *Moore*, the judges also agreed, that if the old sheriff had given notice, *by word*, of the omitted execution, it would have been sufficient to have charged the new sheriff, notwithstanding the omission in the indenture. *Dalton* (p. 16.) lays down the same rule. So liberally did the judges, at that day, construe the rule, that the new sheriff must have notice of the executions; and it is to be observed, that this is not a statute provision, but an equitable rule of practice, for the security of the sheriff. The statute, by the writ of discharge, only requires, in general, that the old sheriff shall, by indenture, *deliver over the county, together with the rolls, memorandums, &c.*

The title of the cause mentioned in the indenture was sufficient to have enabled the sheriff to take a bond for the liberties. The statute prescribing the bond does not require the title of the cause to be precisely mentioned. It says nothing about it; the title of the cause need not form any substantive part of the penalty or of the condition of the obligation, and if mentioned in the recital to the condition, it is mentioned only as inducement, and any words which would make the title of the cause certain, by reference, would be sufficient. It is a settled rule that even a mistake in a recital to a bond does not vitiate, for it is no direct affirmation, and is not an essential part. (*St. John* v. *Diggs*, Hob. 130. Co. *Litt.* 352. b. 3 *Ch. Cas.* 101.

But it is said that the true sum for which the prisoner was held was not mentioned, and that a much smaller sum was specified. In examining the original indenture, produced upon the argument, it was very equivocal and uncertain, whether the sum really intended, was 260 dollars and 40 cents, or 2640 dollars. Whatever doubt there might be upon this point, there is conclusive evidence that the defendant was afterwards informed of the true sum, as the bond taken by him on the 31st *March*, 1809, for the liberties for *Brockway*, mentioned the true sum for which he was holden at the suit of the plaintiffs. That bond was produced at the trial, by the defendant himself, and it concludes him, as to the fact of notice at that time of the true sum. That bond also specified the names of all the plaintiffs to the execution, except one, so that the defendant must have accepted *Brockway* in execution under the indenture, at the suit of the plaintiffs, and have made subsequent inquiries as to the names of the house of *Tallmadge, Smith & Co.*

If the recital to this bond omitted one of their names, still that would not have impaired its security for the purpose it was taken; for a recital in a bond of a particular fact, estops the obligor from denying that fact. (*Willes's Rep.* 9. 12.) But this point is now immaterial in this suit, and the only answer to this fact of notice of the true sum is, that the escape was prior to the date of this bond. But this answer is not sufficient, for considering the uncertainty whether the true sum was really mistaken in the indenture, the defendant ought to have shown *the time when* further information was given to him than what appeared in the indenture. The presumption is, that the defendant knew the true sum before the date of the bond of the 31st of *March*, 1809, for he had before taken another bond for the liberties, with other securities, and that bond he refused to show upon the trial. The inference is, then, irresistible, that *that* bond would have disclosed the fact of the true sum being known to the defendant before the escape.

This whole defence, of a want of notice of the true sum for which *Brockway* was charged in execution, was probably a thought which suddenly arose at the trial, and I think it extremely ill supported.

The question on the credibility of the testimony of *Dewitt*, the late sheriff, does not appear even to have been raised at the trial, nor was his testimony essential, as every requisite fact was proved without it. His character was not attacked, nor was there any just cause for impeaching his testimony on any essential point. If the jury had found a verdict for the defendant upon this case, the court would have been obliged to have set it aside as against law, and why should we grant a new trial when we see from the case, that the plaintiffs would again be entitled to a verdict? There is no suggestion that any further evidence is behind to alter the state of the case. The suggestion of the judge at the close of the trial was no more than what is usual and proper, when the case presents no material facts involved in doubt, and when the conclusion of law upon those facts appears clear to the judge. It was only a suggestion to save time, and one which still left it open to the judgment and election of the counsel, to address the jury.

For these reasons, the court are of opinion that the motion for a new trial must be denied.

SPENCER, J. dissented.

Rule refused.