#### IN THE

# SUPREME COURT

##### OF THE

## STATE OF NEW YORK,

IN FEBRUARY TERM, 1827, IN THE FIFTY–FIRST YEAR OF OUR INDEPENDENCE.

---

### JACKSON, *ex. dem.* MERRIT, *against* BOWEN and NEFF.

EJECTMENT, for 130 acres of land in Homer, Cortland county; tried at the circuit in that county, December 19th, to a bond *bearing even date, for* $750, executed by the mortgagor to the *mortgagees.* The reference in a mortgage to the collateral security, was The bond intended, was dated a few days prior to the date of the mortgage; was to the mortgagees and two others; and was a bond of indemnity, &c., against a promissory note for $750, executed by the mortgagees and the two others, to the mortgagor or *order,* dated November 18th, 1817; which the makers were obliged afterwards to pay; *held,* that the variance was immaterial; and that the reference was immaterial; and that the reference was sufficiently certain; or if not, that it might be made so by parol evidence, showing that this was the bond intended.

Whether a total misdescription of the bond would have vitiated the mortgage? *Quære.*

The note, intended by the mortgage, was *on demand,* payable to the mortgagor or *bearer,* and dated on the 17th of November, 1817; whereas the bond recited it as a note for $750, generally, payable to the obligor or *order,* and dated on the 18th of November, 1817. *Held,* that the variance was immaterial; and that the obligees might show by parol what note was intended by the bond.

*It seems,* that a fixing up of the advertisement of a sale, under a power contained in the mortgage, on the court house door, for the purposes of foreclosure at law, is, *prima facie,* sufficient within the statute, (1 R. L. 374, s. 6,) without showing it to have been continued.

A conveyance by a mortgagee, as upon a statute foreclosure, under the power of sale in his mortgage, even if the proceedings to foreclose be irregular, yet carries all his interest as mortgagee, to the purchaser, as well in the debt as in the land mortgaged.

Such a deed, at least, operates as a good assignment of the mortgage; and the purchaser may claim as assignee.

The assignee of a mortgage in possession will be protected against an action of ejectment by the mortgagor and all persons coming in under him; and this, though his assignment was obtained on an usurious consideration.

The lessees of the usurious assignee of a mortgage, in possession, without notice of the usury, are to be considered *bona fide* purchasers; and will as such, be protected against the allegation of usury.

A levy on sufficient personal property to satisfy a judgment, though the execution be returned unsatisfied by the direction of the plaintiff, or the assignee of the judgment, extinguishes the judgment; and a sale of land under a subsequent execution thereon is void, especially if the purchaser at the sale be not a *bona fide* purchaser.

*1825, before THROOP, C. Judge; when the case made out was as follows:

The title to the premises was in Solomon Noble, on the 17th of November, 1817. On the 13th of May, 1818, a judgment was perfected and docketed against him, in the Cortland C. P., for $610, in favor of Dickson and Keep, on which a *fi. fa.* issued for the $610, endorsed for $262,64. A deed was executed by the sheriff of Cortland, to the lessor of the plaintiff for the premises in question, dated April 29th, 1820. This recited the execution, as directing the sheriff to collect $262,64, the sum endorsed, not the sum in the body of the writ; and that the premises had been sold to the lessor of the plaintiff for $260. The deed was objected to as evidence by the defendant, on the ground that it misrecited the execution; but the objection was overruled.

On the 8th of November, 1817, Noble mortgaged the premises to Rufus and Obadiah Boies, and Asahel Lyman, in fee, which, as stated in the mortgage, was for securing $750, according to the condition of a bond bearing even date therewith, executed by the mortgagor to the mortgagees. This mortgage contained the usual power of sale. The defendants also gave in evidence a bond, as the one referred to in the mortgage, which was dated November 18th, 1817; and was to the mortgagees, together with David Merrick and Levi Boies; reciting that the mortgagees had, on that day, made their note to the mortgagor, Noble, or order, for $750; and conditioned, that if Noble, his executors, administrators, assigns, endorsers or endorsees, should not, at any time thereafter, call on the obligees for payment; and if Noble, the mortgagor, should, within one year, return the note to the obligees, and save them harmless, then the obligation to be void. The plaintiff objected to the receipt of the bond as evidence, for its variance from the mortgage, as being to the mortgagees and others; and as being a bond of indemnity; whereas the mortgage was simply for the payment of money. The judge reserved the questions.

[*15]

*The defendants then offered parol evidence, that the

object of the mortgage was to secure the note. This was objected to, but received. The note was then offered in evidence, which was dated November 17th, 1817, and payable to Noble, or bearer, on demand. The plaintiff objected, that being so dated, and so payable, it was not the note provided for in the bond; but it was received in evidence, the judge reserving the question.

Parol evidence was then given by the defendants, (though objected to,) that Noble wanted money; and the object of the makers was to aid him by means of their note; and that the mortgage was to indemnify them.

It also appeared that the makers had paid the note to Noble; that the mortgage had been foreclosed under the statute, and power of sale, Rufus Boies bidding off the premises at $950.

The plaintiff objected that there being a subsequent judgment, the mortgage could not be foreclosed under the statute.

The proof of the advertisement of the sale was also objected to, as insufficient. It was proved to have been regularly put up on the court house door; but there was no proof of its continuance for 6 months.

The defendants then gave in evidence a deed, dated June 22d, 1820, as upon foreclosure of the mortgage under the statute, in the usual form, from Obadiah Boies and Asahel Lyman, two of the mortgagees, to Rufus Boies, the other mortgagee; and a quit claim deed of all estate, right, title and interest in the premises from the latter to Charles W. Lynde.

The plaintiffs objected that Rufus Boies had never been in possession; that no interest was shown in him; and that the deed could not operate as an assignment of the mortgage. The judge reserved the question, and received the deed.

The defendants then gave in evidence a lease, from Lynde to them, for three years.

The defendant also proved, (though this was objected to by the plaintiff,) that a *fi. fa.* had issued on the judgment, *under which the lessor of the plaintiff claimed, prior to

[*16]

the one under which he received his conveyance from the sheriff; and that a levy was made on personal property sufficient to satisfy it; that one White, who had previously taken an assignment of the judgment, directed the sheriff to return that execution unsatisfied; which he did, except as to a part, paid by Noble, the defendant in the execution. That White then caused the second execution to be issued; sold the land, and became the purchaser; but agreed with Noble that the sheriff should give the deed to any person who would advance the money. Afterwards, Noble paid the money; and directed the deed to be given to Merrit, the lessor of the plaintiff, which was accordingly done. Noble declared, that, in this transaction, he acted as the agent of Merrit, who was his uncle. It appeared that Noble applied to Merrit for money; and informed him the land was bid off by White, the assignee of the judgment, who had directed the sheriff to convey. Merrit let Noble have $460; and it was agreed between them, that the deed should be given to Merrit.

The plaintiff then offered to prove that the quit claim from Rufus Boies to Lynde, was given on an usurious consideration, and was therefore void. On objection, this evidence was overruled by the judge; who gave his opinion that the plaintiff's action was not sustained. He, therefore, directed a nonsuit, with liberty to the plaintiff to move to set it aside, on a case.

*H. Stephens,* now moved to set aside the nonsuit, and for a new trial. He said the variance between the execution and sheriff's deed was not material. (10 John. 381; 1 John. Cas. 288; 2 Caines, 61; 3 Com. Dig. Fait, (E. 1;) 18 John. 10, 60, 81; 5 Cowen, 529.) There was a fatal variance between the bond recited in the mortgage and the bond produced; and parol evidence was not admissible to correct it. (1 Com. Rep. 250; id. 407.) The same objection applies to the note.

There being a judgment subsequent to the mortgage, the foreclosure could not be at law, but only in equity, *the judgment creditors being made parties. 1. R. L. 374; 14

John. 443 ; 15 id. 309 ; 3 John. Ch. Rep. 464. But if otherwise, the continuance of notice on the court house door should have been proved. 3 John. Ch. Rep. 341. The quit claim deed from R. Boies to Lynde was inadmissible. 5 John. Ch. Rep. 570, and the authorities there cited. 19 John. Rep. 325 ; 4 id. 41 ; 11 id. 534 ; 15 id. 320 ; 3 id. 363.

ALBANY,
Feb. 1827.

Jackson
v.
Bowen.

The first execution, and the proceedings under it, could not affect the rights of the purchaser. (1 Cowen, 622 ; id. 711.)

The evidence that R. Boies conveyed to Lynde on an usurious consideration, should have been received. 1 R. L. 64, s. 1 ; 3 John Cas. 206 ; 2 Stark. Rep. 211 ; 4 Cowen, 266 ; 2 Campb. R. 375, 554 ; 4 id. 1 ; 2 Hen. & Munf. 14 ; 3 Serg. & Lowb. 109.)

A mere equitable title cannot be set up by the defendant in this action. (2 John. Rep. 221 ; 3 id. 422 ; 8 id. 487 ; 2 John. Cas. 321.)

*N. Dayton* and *J. A. Collier*, contra. The several variances objected by the counsel for the plaintiff, are immaterial. (9 John. 82 ; 5 Cowen, 530 ; 4 id. 406 ; 18 John. 7 ; 8 id. 455 ; 5 id. 89 ; 2 id. 230 ; 7 id. 217 ; 1 John. Cas. 95 ; 15 John. Rep. 458 ; At any rate, parol evidence was admissible, to correct the variance, if there was one. There was a latent ambiguity to be explained. (2 Phil. Ev. 89, and the cases there cited. Peak, Ev. 112, 13 ; 10 John. 133 ; 13 id. 518.)

Subsequent incumbrances are not prejudiced by this foreclosure. If the judgment creditors wish to avoid it, let them come in and redeem. This they must do at all events ; and then take their remedy in a court of equity. Showing the advertisement regularly affixed on the court house door is all the statute requires. The affidavit of notice need not be that it was continued. (4 Cowen, 266.)

Noble was in possession ; and the conveyances from the mortgagees passed his possession at least. If the *mortgage was regularly foreclosed, the entire title passed ; if not, the

[*18]

ALBANY,
Feb. 1827.

Jackson
v.
Bowen.

interest of the mortgagees, as such, with the mortgagor's possession. The defendants are in, at least, as lessees of the mortgagees, on their assignee. (10 John. 480; 1 Woodf. L. & T. 108; 1 T. R. 383; Doug. 283; 2 John. 87; 4 id. 220.) The prior execution and levy, satisfied the judgment; and the sale was void. (12 John. 207; 1 Cowen, 622; 4 Cowen, 418; 2 Bac. Abr. 720, 2 Saund. 47, note (1;) 4 John. Ch. Rep. 255.) Merrit had notice, if this was necessary. Noble bought of White as his (M.'s) agent; and notice to him was notice to Merrit. (9 John. 163; 2 id. 248, 259.)

The lessor of the plaintiff cannot object to our title on account of the alleged usury. If the title is not in us, for that reason, still it is out of the plaintiff. It remains in the mortgagees. But an absolute conveyance cannot be affected by usury. Beside; the mortgage being valid originally, it is not affected by the subsequent usury as between an assignor and assignee. (2 Caines' Cas. Err. 66, 84; 10 John. 185; 9 Mass. Rep. 45; 2 Con. Rep. 132, 134; 4 Cowen, 266; 10 Wheat. 393.)

Again; the defendants, who claim as lessees under Lynde, had no knowledge of, and cannot be affected by the objection of usury. (10 John. 185.)

*Curia, per* WOODWORTH, J. There are several questions arising in this cause, which I think unnecessary to consider, inasmuch as a decision upon them, either way, would not vary the conclusion at which I have arrived. I will first examine the objections taken to the defence. The mortgage was prior to the judgment; it was to secure $750, according to the condition of a bond executed to the mortgagees. The bond produced was *executed* to the mortgagees. The reference in the mortgage is not of a bond to them solely; and the addition of two other names is not, therefore, contradictory. The mortgage does not profess to set out the bond particularly. What is stated is matter of description merely, not an affirmation of the *precise form of the bond. The material fact alleged is, that there was a bond to secure $750, to the persons named as mortgages.

[*19]

But whether to them solely or jointly with others is not averred.[1]

[1] In *Dillingham* v. *Estill*, (3 Dana's Rep. 21,) the plaintiff sued for a breach of warranty of soundness, contained in a bill of sale of two slaves; the defendant pleaded that the following writing—"*I, Benjamin Estill*, (the vendee,) *release said Dillingham from any responsibility of said negroes, as witness, my hand*—Benjamin Estill"—was executed simultaneously with the bill of sale, &c.; averring, that it was intended as an integral part of the bill of sale, and to operate as a defeasance or release of the warranty. The court of appeals overruled a demurrer to the plea; holding, that however incongruous and extraordinary such an entire contract might be, both writings must be construed together, if they were in fact cotemporary. It was argued that the writings could not be connected by parol testimony, or by averment merely. The court, in respect to this, said—"It has been decided that one writing cannot be connected with another, unless it in some way refers to it. But if that here relied on was cotemporaneous with the bill of sale, it can be understood as referring to it without any parol proof. For, surely, if a vendor of slaves make a bill of sale with warranty, and, at the *same time*, the vendee deliver to him a writing, stipulating that he shall not be responsible for 'the *said negroes*,' the latter agreement, without any extraneous proof, might be understood to refer to the former, and to mean, that the vendor should not be responsible on his formal warranty. It would not be inconsistent with either of the writings, or with any rule of evidence, to prove hat they were given at the same time; and, indeed, as that given by the appellee (the vendee) has no date, the fact of identity as to date, is far from being intrinsically improbable." (Id. 23.) Even if the date had been different, parol testimony might have been received, it seems, to show that both were executed at the same time.

In actions on promissory notes, writings connected therewith, by direct reference, or necessary implication, are admissible by way of showing it conditional, &c. (See *Davlin.*v. *Hill*, 2 Fairf. Rep. 434; *Hunt* v. *Livermore*, 5 Pick. Rep. 395.) And parol evidence, consistent with the material parts of the two writings, and tending to connect them, seems allowable. (See the cases, supra. Also *Heywood* v. *Perrin*, 10 Pick. 228.)

The date and subscribing witnesses of two writings being identical, the court presumed one to be the consideration of the other, nothing appearing on their face to counteract that presumption. (*Aldridge* v. *Birney*, 7 Monroe, 344, 347.)

Where an agreement or disposition of property can only operate by writing, an instrument referring to another must describe it so clearly, that, by the description, it may be identified. For, to allow parol evidence to connect two instruments together, where there is no reference to a foreign instrument, or where the description of it is insufficient, would be to give it an effect independent of the writing, and contrary to the provisions of law which require the whole to be in writing. (See *Brodie* v. *St. Paul*, 1 Ves. Jun. 330; *Smart* v. *Prujean*, 6 Ves. 566; *Coles* v. *Trecothick*, 9 id. 249; *Boydell*

ALBANY,
Feb. 1827.

Jackson
v.
Bowen.

It is well settled that even a mistake in a recital to a bond does not vitiate, for it is no direct affirmation and is not an

v. *Drummond*, 11 East, 153; Per Holroyd, J., in *Kenworthy* v. *Schofield*, 2 Barn. & Cress. 948; *Clinan* v. *Cooke*, 1 Scho. & Lef. 22; *Tawney* v. *Crowther*, 1 Bro. C. C. 161, 318; *Givins* v. *Calder*, 2 Dess. Eq. R. 188; *Parkhurst* v. *Van Courtlandt*, 1 John. Ch. Rep. 273; S. C. on appeal, 14 John Rep. 15.)

But this rule is not to be so interpreted as to exclude evidence for the purpose of applying the terms of the reference; in other words, evidence tending to show what the reference means. The description must be compared with the instruments to which it may possibly refer; if the description is in some respects erroneous, the erroneous part may be rejected, agreeable to the doctrine *falsa demonstratio*, &c.; in short, the reference is to be dealt with as you deal with other descriptions, in applying them to the object or subject intended. In *Hodges* v. *Horsefall*, 1 Russ. & Mylne, 116, an instrument, purporting to be an agreement for a lease, contained a clause for the erection of additions, according to a plan agreed upon; it appeared that three distinct plans existed for making the additions alluded to; and an objection was made that parol evidence was inadmissible to determine what plan was meant. Lord Lyndhurst, in giving judgment, said—"I am of opinion, on the authority of all the cases, and especially the case in 1 Scho. & Lef. 22, where Lord Redesdale has considered the subject very fully, that, as the written agreement refers specifically to a plan, if there be parol evidence clear and satisfactory to identify the particular plan, that evidence may be properly admitted for the purpose of so identifying it." See also *Saunderson* v. *Jackson*, 2 Bos. & Pull. 238, 239, and the observations of the Lord Chancellor in *Dillon* v. *Harris*, 4 Bligh, N. S. 343. In *Shortreede* v. *Check*, 1 Adol. & Ellis, 57, assumpsit was brought upon a guarantee, in which the consideration was stated in the following form: "You will be so good as to withdraw the promissory note; and I," &c. A promissory note, payable to the plaintiff, and made by the defendant's son, was produced on the trial by the plaintiff, and no evidence was given of the existence of any other note. A motion was made for a new trial, on the ground that the description of the note was not sufficiently explicit to ascertain what note was meant, without the admission of parol evidence. Held, that there being no evidence of any other note to which the agreement could apply, the one produced was to be regarded as that intended, and so the agreement was held sufficient within the statute of frauds. Had it turned out that there were two notes, there might have been a difficulty, it was said, in explaining which was meant.

Where a mortgage of chattels purported on its face to have been given to secure the plaintiff for his liability on a note given to A., the date of which was specified, and the amount, but the one produced on the trial by the plaintiff, though agreeing with the description in other respects, varied from the amount specified, (the one described being for $236, and the one produced for $256;) held, that the plaintiff might show that the note produced was the only note he had signed as surety for the mortgagee, and so

essential part. (5 Cowen, 529; 9 John. 90; 8 John. 457.) In what manner, and at what time the bond was payable, is no where alleged; that necessarily depended on the instrument referred to.[1] The legal presumption is, that this was the bond intended, at least until some doubt was raised. But there is no room for presumption; the fact is

<div style="float:right">
ALBANY,
Feb. 1827.

Jackson
v.
Bowen.
</div>

identify it as the one intended by the description. (*Johns* v. *Church*, 12 Pick. Rep. 557.) In Pennsylvania, where there was a reference in an assignment to a note, describing it by its date, amount, time of payment, the name of the maker, and the person in whose favor it was drawn; held, that the testimony of the assignor, showing that no note drawn in favor of the person named ever existed, but that another note, drawn *by* such person, and corresponding with the description in other particulars, did exist, and that this was the one intended, was admissible. (*Commercial Bank* v. *Clapier*, 3 Rawle's Rep. 335.) This case, however, seems to go on the equity doctrine of correcting mistakes, which power is exercised in that state by courts proceeding, *in form* at least, as courts of law. Hence, direct evidence of intention, as an independent fact, was perhaps proper.

In Vermont, ejectment was brought by one who claimed in virtue of a mortgage, purporting to have been given to secure a note of $440. The plaintiff produced a note "agreeing with the one described," except that the sum was $449, instead of $440. He then proposed to prove by parol, that "the note produced was the one intended to have been described," and that the variance was through the mistake of the scrivener. The court rejected the evidence and directed a verdict for the defendant; and the decision was afterwards sustained, on review. *Edgill* v. *Stanford*, 3 Verm. Rep. 207. The suit was in a court of law, and the evidence offered was designed obviously to show mistake or intention as an independent fact; as such, it was irrelevant to the point of interpretation. It might perhaps have been held otherwise had the evidence proposed been of circumstances collateral to the question of intent, and had the reference to the note been sufficiently descriptive of the one produced to have enabled the court to see, by the aid of such evidence, that this was the one intended, notwithstanding the *falsa demonstratio* as to the amount.

[1] Where one writing refers to another, either tacitly or expressly, both are to be construed together; and one may correct an erroneous description contained in the other, or even vary or add to, as well as explain it. Two writings executed at the same time, in relation to the same subject matter, have, in many cases, been deemed one instrument, with a view to the construction of either. The reference from one writing to another may be quite indirect, or by implication only. That they are contemporaneous and kindred in respect to subject matter, is frequently inferrible from circumstances appearing *in* the writings themselves. See *Jackson, ex dem. Livingston* v. *Freer*, 17 Johns. Rep. 29; Cowen and Hill's Notes to Phillipps' Evidence, part 2, pp. 517, 518.

established by parol testimony, which was properly admitted. The condition of the bond recites the giving of a note for $750, payable to Noble, or bearer. Here the same principle, that makes the bond admissible under the description in the mortgage, is applicable. The note is substantially described; the substitution of bearer, for order, according to the doctrine before advanced, is immaterial. It was a misdescription merely. There is satisfactory evidence that this was the note, against which the makers were to be secured. They have taken it up, and were entitled to the benefit of the mortgage, as a valid security.

Whether the proceedings on foreclosure of the mortgage have been regular; or whether the right of the plaintiff is thereby barred, it seems to me unnecessary to consider. I will, however, remark, that the proceedings appear to have been conducted regularly; and as to any remaining right in the judgment creditor, after the statute foreclosure, it may be observed, that question does not arise in this cause. If it be conceded that no regular foreclosure has taken place, it appears to me the defence at law is nevertheless perfect, on the ground that the defendants are the lessees of the assignee of the mortgagees in possession.

The deed from Obadiah Boies and Asahel Lyman, to Rufus Boies, was in the usual form of foreclosure, reciting the mortgage and sale. By this act, Rufus Boies acquired all the right and interest of his co-mortgagees in the mortgage, as well as the land; the right to the debt, as well as the pledge, was transferred. They could not, after this, assert any legal claim, and if not, allowing the proceedings to foreclose to have been defective and inoperative, still Rufus Boies necessarily acquired all their interest in the mortgage. If Rufus Boies did not obtain an absolute title to the land, it operated as a good assignment of the mortgage, and placed him on the same ground as though he had been sole mortgagee.

The deed from Rufus Boies to Lynde, was intended to convey the title to the land. If it did not perform that office, still it is enough for the defendants to show, that it may operate as an assignment.

The question of foreclosure makes no difference between these parties. Boies conveys all his right, title and interest. It is difficult to conceive what remaining interest he had; his lien on the land by virtue of the mortgage, which was an interest, passed to Lynde; and thereby he acquired the right of an assignee. The intention was, to pass a greater interest. If that failed, it is no objection to the operation of the instrument as an assignment. *Valeat quantum valere potest.*

But it is contended, that the evidence offered by the plaintiff, to prove that the conveyance made by Boies to Lynde was for the purpose of securing a usurious loan, made by Lynde to Noble, ought to have been received. Boyes agreed to convey, on receiving his money, to any person Noble should direct; and in pursuance of this agreement, Noble procured Lynde to advance the money. The answer is, that the defendants cannot be affected by the question of usury, between Noble and Lynde; it not appearing that they had any knowledge of, or in any way participated in it. (10 John. 185.) Although no regular foreclosure of the mortgage be proved, yet the assignee of the mortgagee being in possession, may protect his possession by it. (10 John. 480.) The defendants are lessees of the assignee of the mortgagee; and are entitled to the protection of *bonâ fide* purchasers, so that whether there be usury or not, is, to them, immaterial. If there be no usury, they have no occasion to put their defence on the ground of being *bona fide* purchasers. It is enough, that they are in possession under the assignee, who is protected against the judgment. If, however, by means of the foreclosure, Boies acquired a title, the defendants may safely waive both the preceding grounds, and rest on an outstanding title in Boies, which defeats the action.

[*21]

As to the effect of the prior execution; according to the case, *Ex parte Lawrence*, (4 Cowen, 417,) the levy on sufficient personal property was an extinguishment of the judgment; and the judgment ceased to be a lien. But if it be admitted that a *bona fide* purchaser, without notice, would, notwithstanding, be protected, Merrit is not entitled

ALBANY,
Feb. 1827.
———
Jackson
v.
Bowen.

to that character. In the first place, White and Noble had actual notice. It is not proved that the money advanced by Noble to White, was the money of Merrit. It is true, Noble so declared; but that is not evidence. That Merrit, sometime before, advanced the money to Noble, for the purpose of being so applied, is no evidence against third persons, that in truth the money received was the money of Merrit. He was not the purchaser at the sheriff's sale, although the deed proceeded from the sheriff. It was substantially a purchase from White by Noble, the agent of the lessor of the plaintiff. The general rule is, that notice to the agent, is notice to the principal. Amb. 626; 1 Ves. 62; 2 Mad. 257. On this ground, therefore, no title was acquired under the sheriff's deed.

The motion to set aside the nonsuit must be denied.

Motion denied.