## Case No. 801.

### BALDWIN v. RAPLEE et al.

#### [4 Ben. 433.] [1]

District Court, N. D. New York. Dec., 1870.

SETTING ASIDE MORTGAGE—PAROL PROOF OF CONSIDERATION—USURY—PLEADING —ASSIGNMENT— CONCEALED FRAUD.

1. Where a mortgage purported on its face to have been executed to secure the payment of $10,000, according to the condition of a certain bond, and it appeared that no such bond was ever executed: *Held*, that that fact was not of itself fatal to the claims of the mortgagee, and that parol proof might be received to sustain the mortgage.

2. Where the note, to secure which a mortgage was alleged to have been given, was dated May 10th, 1868, and bore interest from that date, and the consideration of the note was not received till the 18th of that month; and, on a bill being filed by the assignee in bankruptcy of the mortgagor, to set the mortgage aside, it was claimed that the mortgage was void for usury: *Held*, that it was a sufficient answer to that objection to the mortgage, to say that there was no allegation in the bill, that the mortgage was usurious, or that there was any corrupt agreement or any intent to secure more than lawful interest.

3. Where a mortgage, which purported on its face to be given to secure a bond for $10,000, was assigned, but no bond was ever executed, and a note for $10,000, which was claimed to have been given for the consideration of the mortgage, was not delivered over when the mortgage was assigned: *Held*, that the mortgage was not thereby extinguished. The as-

signment of the mortgage, "together with the bond accompanying said mortgage, and therein referred to, and all sums of money due or to grow due thereon," was a transfer of the debt as well as of the mortgage, and would include the note as incident to the debt.

4. A deed or mortgage which misrepresents the transaction it professes to recite or the consideration on which it was executed, is liable to suspicion, and parol proof which contradicts or varies the terms of a mortgage, or is relied on to give it effect as a security for a debt, different from that which it is apparently intended to secure, should be of the most satisfactory character.

5. On a bill in equity filed to set aside a mortgage given as above, and assigned, it was attempted to sustain the mortgage as being given for an actual debt other than what was stated on its face: *Held*, that the defendants had not satisfactorily established their position, and that the mortgage must be set aside.

6. Even if there had been sufficient proof of an agreement to give a proper mortgage, and if a cross bill had been filed to obtain a reformation of the mortgage executed, yet whether, under the circumstances, a court of equity would have given relief to the holder of the secret lien of an unrecorded mortgage, as against the assignee in bankruptcy, quere.

7. Whether in a court of equitable jurisdiction the limitation of six months contained in the bankruptcy act, begins to run in the case of a concealed fraud, from the time of its commission or from the time of its discovery, quere.

[In equity. Bill by Mason L. Baldwin, assignee in bankruptcy of Jefferson T. Raplee, against Nehemiah Raplee and Ira Raplee, to set aside a mortgage executed by the bankrupt. Decree for complainant.

[Subsequently the respondents took an appeal to the circuit court, and a motion to dismiss the appeal was thereafter denied in Baldwin v. Raplee, Case No. 802. The final decree in the circuit court is nowhere reported.]

HALL, District Judge. This is a bill in equity, filed by the plaintiff, as the assignee in bankruptcy of Jefferson T. Raplee, a bankrupt, for the purpose of setting aside a mortgage for $10,000 and interest, executed by the bankrupt to the defendant Nehemiah Raplee, and bearing date April 14th, 1868. This mortgage appears to have been acknowledged, by the bankrupt, before Spencer S. Raplee, a notary public,—who is a brother of the bankrupt,—on the 15th day of April, 1868; and it was duly recorded on the 26th of July, 1869, at 8¼ o'clock, A. M.:—the bankrupt, who had for several years been doing business as an individual banker, having failed and closed his bank on the 23d of the same month. By an assignment dated on the 24th of the same month, the mortgage was assigned by Nehemiah Raplee to the defendant Ira Raplee, as security for a pre-existing debt, due to him from Jefferson T. Raplee, and for which Nehemiah Raplee was liable as his surety.

The creditor's petition against Jefferson T. Raplee, as an involuntary bankrupt, was filed on the 30th day of July, 1869, and under that petition the plaintiff was duly appointed assignee.

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

The mortgage in question was in the form of a deed or grant, with a provision and declaration in the following language; viz.: "This grant is intended as security for the payment of the sum of *ten thousand* (10,000) *dollars and interest*, according to the condition of a bond this day executed and delivered by the said *Jefferson T. Raplee, party of the first part*, to the said party of the second part; and this conveyance shall be void if such payment be made as herein specified." The words of such provision which are above *italicised* were written, and the others were part of the printed blank used in drawing the mortgage.

The assignment to Ira Raplee was in form an assignment of the mortgage "together with the bond accompanying said mortgage, and therein referred to, and all sums of money due and to grow due thereon;"—and it contained a covenant that there was unpaid and "due on said bond and mortgage the sum of $10,894 18."

The mortgage contained the usual power of sale, but no express covenant for the payment of the money therein mentioned.

The plaintiff's bill alleges that the mortgage was executed on the 14th of April, 1868, or on some other day between that date and the filing of the creditor's petition in bankruptcy, as aforesaid; that he was informed by the mortgagee and believed that no such bond as was described in the mortgage was ever at any time delivered by the bankrupt to the mortgagee; and that the plaintiff did not know of any other or further condition or terms of payment of the moneys mentioned in said mortgage. The bill also alleges that the United States internal revenue stamp affixed to said mortgage appeared by the record thereof to have been cancelled by the bankrupt on the 18th day of April, 1868; that no bond such as is described in the mortgage had ever been delivered to or possessed by said Ira Raplee, or been seen by him; and that the assignment to said Ira was made as collateral security, as aforesaid. The bill further alleges that said mortgage was executed and delivered to the said Nehemiah Raplee, as aforesaid, when the said bankrupt was largely indebted to divers persons, and insolvent, and with intent thereby to hinder, delay and defraud the creditors of the said bankrupt; and was taken and received by the said Nehemiah Raplee with the like intent, and with full knowledge of the insolvency of the bankrupt, and of his said fraudulent intent; and that it was executed and delivered by said bankrupt without any good or valid consideration whatever; and also that the assignment of said mortgage to Ira Raplee was also without any valuable consideration, and was received by him with full knowledge of the bankrupt's insolvency, and was utterly void as against the plaintiff; but it was not alleged that the mortgage was executed for the purpose of giving a preference to said Nehe-

miah Raplee over the other creditors of the bankrupt, or to defeat the object of the bankrupt act, or evade any of its provisions; or that it was executed or accepted in fraud of that act.

The defendants, by their answer, admitted and stated the execution of the mortgage on the 14th, and the acknowledgment thereof on the 15th April, 1868; the affixing and cancelling of the internal revenue stamps on the 18th of the same month; that it was not recorded until the 25th day of July, 1869; and that the assignment thereof to Ira Raplee was executed on or about the 24th day of July, 1869. The answer also admits that no bond was delivered to Ira Raplee at the time of the assignment of the mortgage; and it avers that the mortgage was duly delivered by the said Jefferson T. Raplee to said Nehemiah, on or about the 19th day of April, 1868.

The answer of the defendants, in respect to the allegation that no bond accompanied the mortgage, and in respect to the consideration of the mortgage, and the debt it was actually intended to secure, is as follows, viz.: "These defendants, further answering, aver and say, and each for himself says,—the said Nehemiah, of his own knowledge, and the said Ira, on information and belief, that, at the time the said mortgage mentioned was made, executed, and delivered by the said Jefferson T. to the said Nehemiah, in fact, no bond accompanied the same; that the blank used in preparing said mortgage contained said printed clause or words, but which are not expunged or erased at the execution thereof, through inadvertence or oversight; that, in truth and in fact, the real and true consideration of the said mortgage was the sum of $10,000 in cash, before that time lent and advanced to the said Jefferson T., by the said Nehemiah, and for which the said Nehemiah then held, and ever since has and still holds, the promissory note of the said Jefferson T.; and to secure the payment of the said sum so lent and advanced, and the said note, the said mortgage was made, executed, and delivered, by the said Jefferson T. to the said Nehemiah; that no part of said sum so lent and advanced by the said Nehemiah to the said Jefferson T., on the said note or any part thereof, has ever been paid." And, again, in another part of said answer: "And these defendants, further answering, aver and say, and each for himself avers and says, that he is informed, and believes, that no bond was ever executed to accompany the said mortgage, and the said Jefferson T. did not execute such bond, and the said Nehemiah, of his own knowledge, avers and says, that it was intended that the said mortgage should be held as security for the payment of the said sum of $10,000, so as aforesaid lent and advanced by the said Nehemiah to said Jefferson T., and the interest thereon; said sum being represented by the said note given by the said Jefferson T. to the said Nehemiah,

and which sum or note has never been paid."

The answer also alleges, that the debt of the bankrupt to Ira Raplee, in respect to which Nehemiah Raplee was liable as security as aforesaid, was, in part, upon a note of said bankrupt for $5,000, given on or about the 4th of July, 1867, and payable thirty days after that date; and the remaining $5,000 was upon a certificate of that amount made by the bankrupt, as an individual banker, under date of January 1, 1869, and payable in current funds, with semi-annual interest.

The defendants denied all knowledge or suspicion of the bankrupt's insolvency, and averred that they had no cause to believe he was insolvent, or unable to pay his debts, until long after said mortgage was executed, and they denied that it was executed or accepted with the intent to hinder, delay, or defraud creditors.

There are other allegations and admissions in the bill and answer, but it is not deemed necessary to refer to them more particularly in this preliminary statement.

Upon the taking of the proofs in the case, Nehemiah Raplee was sworn as a witness for himself and his codefendant, and was examined at length in respect to the execution, consideration, delivery, and purpose of the mortgage in controversy. Jefferson T. Raplee, the mortgagor, had absconded immediately after his failure, and was absent from the state; and his father testified that he did not know where he was; and, of course, his testimony has not been produced.

Nehemiah Raplee's testimony is, in several points, entirely inconsistent with the allegations of his sworn answer. Instead of testifying that the mortgage was delivered on or about the 19th day of April, 1868, he first testified that it was delivered a short time after the 10th of May, 1868; and, instead of testifying that the mortgage was given for $10,000 in cash, previously lent and advanced by him to Jefferson T. Raplee, for which he then held his note, he testified that the mortgage was given for the transfer by him to Jefferson T. of a mortgage of Daniel Ellis, to the amount of $3,446 36, and his the said Nehemiah's check for $6,553 77, on said Jefferson T. Raplee's bank; that said mortgage of Ellis was assigned, and said check given and dated on the 18th May, 1868, on which day the mortgage of $10,000 was delivered, together with a note of Jefferson T. Raplee's for $10,000, dated on the 10th day of May, 1868. The mortgage, he says, was given as security for the payment of this note, dated more than three weeks after the date and alleged acknowledgment of the mortgage, and more than a week before the date of the check, and of the alleged assignment of the mortgage. The note is produced, and is in the handwriting of Jefferson T. Raplee. The mortgage and the certificate of acknowledgment, including the date, are also in his handwriting. The revenue stamp on the mortgage has on it the date, "Apr. 18, 1868," with

initials, "J. T. R." and "N. R.," but neither of these initials are believed to be in the handwriting of either Jefferson T. or Nehemiah Raplee. The certificate of acknowledgment is signed by Spencer S. Raplee, the brother of Jefferson. On the note is an internal revenue stamp, purporting to be cancelled by J. T. Raplee's signature; but it is evident that this signature is in the handwriting of his brother, S. S. Raplee; and it is almost certain that the date on the stamp was first written April 20 or 21, 1867, and subsequently changed to May 10, 1868. This note appears to have been first endorsed on the back, "N. Raplee, Note, $10,000," and the letters "J. T." afterwards written above the "N." The assignment of the mortgage from Nehemiah to Ira Raplee is produced, bearing date July 24, 1869, and purporting to have been acknowledged on the same day; but the assignment refers to the record of the mortgage, on the 26th of the same month, or two days afterwards; and gives the exact time of such record, and the book and page on which it is to be found. The revenue stamps on this assignment purport to have been cancelled on the 24th July, 1869, and to have on them the initials of Nehemiah Raplee, and also the initials "J. T. A.," but the cancellation is not supposed to be in the handwriting of Nehemiah Raplee. This assignment was also recorded on the 26th, only half an hour after the recording of the mortgage assigned. It also appears, from the testimony of Nehemiah Raplee, that he had a mortgage on all the real estate of Jefferson T. Raplee, not embraced in the $10,000 mortgage; that such mortgage was given him three or four years before the failure of Jefferson T. Raplee, and that it was not recorded until after the failure. The mortgage now in controversy purports to have been executed in the presence of S. S. Raplee,—his name appearing as the subscribing witness thereto,—but his testimony furnishes no evidence as to the time of the execution of the mortgage, or of his having cancelled the stamp of the note, or being present at its execution.

The testimony of Nehemiah Raplee is certainly open to much criticism, and is, in many respects, indefinite and unsatisfactory. No assignment of the Ellis mortgage to Jefferson T. Raplee is produced, and such assignment is not proved, except by the testimony of Nehemiah Raplee, who also testified that this mortgage was afterwards owned and used by him; having, as he says, been reassigned, or the assignment from him to Jefferson T. having been given up and cancelled before it was recorded; but which he does not profess to be able to state. The bank pass-book of Nehemiah Raplee with his son's bank showed a balance of more than $2,000 against Nehemiah Raplee. He testified that he could not explain it, but that the balance should have been at least four or five thousand dollars the other way. Nehemiah Raplee swears

that he supposed Jefferson T. Raplee to be solvent down to the day of his failure, and had no suspicion of his insolvency; but his testimony shows that he had abundant reason to believe his son to be unable to meet his obligations as they fell due, and the father's denial of his knowledge or belief of such insolvency must, in charity, be attributed to his ignorance of the legal signification of the term, as it would otherwise necessarily be considered a wilful perversion of the truth.

Ira Raplee also testified, that, at the time the assignment to him of the mortgage in controversy was executed by Nehemiah Raplee, no bond was delivered to him: that he asked Nehemiah about the bond, and he said he thought there was no bond, but if he had one, he (Ira) should have it also. He further testified that he had given all that occurred between Nehemiah and himself, and, from his testimony, it appears that nothing was said between them in respect to the note, the payment of which, it is now said, the mortgage was given to secure; and that no other writing in respect to that transaction ever passed between Nehemiah and Ira Raplee.

The $10,000 note of Jefferson T. Raplee was not produced by this witness, upon his examination, when he produced the mortgage and assignment, which were marked as exhibits; but it was afterwards produced and marked as an exhibit, upon the examination of Nehemiah Raplee, the payee. The note produced is payable one day after date, to the order of N. Raplee, but there is no assignment or indorsement on the note, transferring it or directing its payment in any form.

Ira Raplee also testified that, when the assignment of the mortgage was made to him, he asked Nehemiah Raplee for the bond; and that Nehemiah then said, "I have not the bond here, and I am not sure there is any; I will look when I go home, and if I have it, you shall have it."

Nehemiah Raplee further testified, that at the time of the assignment to Ira, he had no bond there, and that he thought Ira asked him about the bond, and that he told Ira that if he had one he should have it; and that he looked afterwards, and did not find any bond. And it is not pretended by him that he in any way intimated to Ira Raplee, at or before the mortgage was assigned to him, that the mortgage was given to secure the payment of the $10,000 note of Jefferson T. Raplee.

It was urged, in behalf of the plaintiff, that the mortgage could not be enforced, because it is, by its terms, a security for the payment of $10,000, according to the condition of a bond of even date therein described, and no such bond was ever executed.

But the mortgage is declared to be intended as a security for $10,000 and interest; and, under the cases of Jackson v. Bowen, 7 Cow. 13, Goodhue v. Berrien, 2 Sandf. Ch. 630, Shirras v. Caig, 7 Cranch, [11 U. S.] 34, and similar cases, it must be considered that the fact that the bond so described was never executed, is not of itself necessarily fatal to the claims of the mortgagee, and that parol proof may be received to sustain the mortgage. Whether, under the proofs in this case, it should be sustained, is a different question, and will be discussed after disposing of other objections urged against the mortgage.

It was also urged that the mortgage was void for usury, because the note produced is dated on the 10th of May, 1868, and bears interest from that date, and the alleged consideration of the note was not received by the maker, or parted with by the mortgagee, until the 18th of that month. It is sufficient to say, in answer to this objection, that there is no allegation in the bill that the mortgage was usurious, or that there was any corrupt agreement, or any intent to secure more than lawful interest; and that there is not sufficient proof to sustain an allegation of corrupt agreement and unlawful interest, if it had been made.

It was also insisted that the assignment of the mortgage to Ira Raplee was without any assignment of the debt secured by the mortgage, and that, under the cases of Langdon v. Buell, 9 Wend. 80, Jackson v. Blodget, 5 Cow. 202, Merritt v. Bartholick, 36 N. Y. 45, the transfer of the mortgage without the transfer also of the note which evidenced the debt thereby secured, extinguished the mortgage.

It is true, the note was not indorsed or delivered to the assignee at the time the mortgage was assigned, but the assignment itself, by its express terms, assigned the mortgage, "together with the bond accompanying said mortgage, and therein referred to, and all sums of money due and to grow due thereon," which is clearly a transfer of the debt, as well as of the mortgage, and would include, as incident to the debt, the note which was the direct evidence of its existence. This objection must, therefore, be overruled.

It was also urged that, by the return of the Ellis mortgage to Nehemiah Raplee, the mortgage was extinguished to the extent that the assignment of such mortgage entered into the consideration of the mortgage in controversy; but this testimony of Nehemiah Raplee, which shows that the Ellis mortgage was returned to him, also shows that it was purchased by him of Jefferson T. Raplee, and paid for by giving up evidences of debt then held against Jefferson T. Raplee. There is, therefore no evidence to show that any part of the $10,000 note has been paid.

The question whether the parol proof in the case is sufficient to sustain the validity of the mortgage in controversy remains to be examined.

A deed or mortgage which misrepresents the transaction it professes to recite, or the

consideration on which it was executed, is, of course, liable to suspicion, and must sustain a rigorous examination. Shirras v. Caig, ubi supra. And parol proof which contradicts or varies the terms of a mortgage, or is relied upon to give it effect as a security for a debt different from that which it is apparently intended to secure, should be of the most satisfactory character; and it should be carefully scrutinized,—especially when such proof is the unsupported testimony of the party chiefly interested in sustaining the mortgage.

In this case, the mortgage, on its face, purports to be a security for the payment of a debt of ten thousand dollars, evidenced by the bond of the mortgagor, bearing even date with the mortgage; but it is admitted that no such bond ever existed; and it is alleged that the mortgage was in fact intended to secure the payment of a note of the mortgagor dated nearly four weeks after the date and acknowledgment of the mortgage. The mortgagee, in making an assignment of the mortgage, more than a year after its date, and after the mortgagor had failed and absconded, assumes to assign with it the bond therein described; and when then questioned in regard to the bond, stated that he did not know as there was a bond, but if there was, the assignee should have it, but said nothing whatever in regard to its being accompanied by, or being given to secure the payment of the note which it is now said it was intended to secure, and subsequently, as he testified, he "looked a good deal at different times" for the bond. There is no satisfactory explanation of the circumstance that the mortgage is dated the 14th of April, and the note the 10th day of May, when neither was delivered, or the consideration paid or transferred, until the 18th of May, 1868; there are suspicious circumstances in respect to the cancellation of stamps, and their dates, as before stated; and then there are the entirely inconsistent statements of the sworn answer and oral testimony of the mortgagee, in reference to the time of the actual delivery of the mortgage, and the consideration of the debt it was intended to secure. The sworn answer avers that it was given for $10,000 in cash, before then lent and advanced to the mortgagor by the mortgagee, and for which the mortgagee then held the note of the mortgagor, and was delivered on or about the 19th day of April, 1868; while the oral testimony of the mortgagee shows that it was delivered on the 18th of May, 1868, and given for the Ellis mortgage, for which $3,446 36 was allowed, and a check of $6,553 77; thus assuming that it was given for a present valuable consideration, and not for a preexisting debt; and not for cash lent and advanced, as alleged in the answer. The insertion of the time and place of the recording of the mortgage in the assignment after its execution and acknowledgment, and before

it was recorded, is of little consequence, except as showing that papers executed by some of the parties were altered after their execution, in view of the then existing circumstances.

Besides these circumstances of suspicion, and others which appear in the preceding statement, it is to be observed that the general statement of Nehemiah Raplee, that this mortgage was given upon the consideration stated in his oral testimony, and to secure the payment of the $10,000 note, is not well supported by his detailed statements of what occurred between him and the mortgagor, in respect to the giving of the mortgage and the purpose for which it was to be given, and was given, and what was said and done at the time the mortgage and note were delivered. In the first part of his examination, and in reply to the question of his counsel, "For what purpose this mortgage was given," he replied, "To secure me for a part of the money I had loaned him." In reply to the question, "Was that indebtedness represented in this note?" he replied, "It was represented there for $10,000. I wish to be understood; that represented $10,000 of his indebtedness to me." In reply to the question, "How came he to give you the note and mortgage?" he testified as follows: "Previous to his giving this mortgage, he was up to my house and said he was to make a payment on the coal property, and wanted to borrow some more money. I said I would help him what I could, and told him he was getting about all I had, and I wanted security. His reply to me was, that he could give me a mortgage on his banking building and lot, which he thought was good security for $10,000. He came down here; the conversation was at my house; the next time he came he brought the note and mortgage. He was in the habit of coming Saturday night or Sunday morning. I looked them over a few minutes on Sunday, and did not look at them again until several days after, when I took them from my desk and looked them over. I found out that his estimation, in looking over the figures of certain transactions, was correct, and I then put them away satisfied. There was only enough estimated to amount to $10,000 of what I had let him have. He delivered me a statement at the time of so much of his indebtedness to me as covered the note and mortgage. I have looked a part of two days for the statement, but cannot find it. I have means of stating what made up the amount of the $10,000. I let him have a bond and mortgage amounting to $3,446 33. I gave him my check dated on the 18th May, 1868, for $6,553 77. The two items make just ten thousand dollars."

There are other portions of Nehemiah Raplee's testimony which have some slight bearing upon the questions under discussion, but it is believed that it does not strengthen the case of the defendants. By their answer

and the character of their proofs, they have assumed the burden of sustaining the mortgage by parol testimony, and showing that it was, in fact, given to secure the payment of the $10,000 note referred to; and the testimony on the case has not satisfactorily established their defence. A decree will therefore be made, setting aside the mortgage in controversy, and discharging the premises mortgaged from any lien under the same, with costs.

It has not been forgotten that it was claimed that there was at least proof of a valid agreement to execute a proper mortgage, and that such agreement would, in equity, be so enforced as to give it the effect of a mortgage. If a cross-bill had been filed to obtain a reformation of the mortgage executed, or to give effect to the agreement for a mortgage, the relative equities of the mortgagee and the assignee in bankruptcy, as the representative of the general creditors of Jefferson T. Raplee, would have been brought into competition, and it is not considered at all probable that a court of equity would have given relief to the holder of the secret lien of the unrecorded mortgage against the representative of creditors who had trusted the bankrupt, and deposited their money in his bank, on the faith of his being the owner of the property covered by the mortgage in controversy here, and of the Pennsylvania property, free of incumbrances, when the defendant, Nehemiah Raplee, held unrecorded mortgages on such property to its full value, with full knowledge that the bankrupt was insolvent, and that he was continually receiving deposits, as a private banker, from persons ignorant of his financial condition.

It was substantially conceded, upon the argument, that the assignee in bankruptcy could not avoid the mortgage in controversy on the ground that it was made and taken in violation or fraud of the provisions of the bankrupt act—it having been executed and delivered more than six months before the petition in bankruptcy was filed against Jefferson T. Raplee. It has not, therefore, been deemed necessary to discuss the question whether, in a court of equitable jurisdiction, the limitation of six months, contained in the bankrupt act, begins to run, in the case of a concealed fraud, from the time of the commission of such fraud, or from the time of the discovery of such concealed fraud, as in other cases where the statute of limitations is pleaded. See Carr v. Hilton, [Case No. 2,437;] Moore v. Green, [Id. 9,763;] Pritchard v. Chandler, [Id. 11,436; ] and Martin v. Smith, [Id. 9,164;] and also the authorities cited in those cases.[2]

Nor has it been deemed necessary to discuss the question whether, under the principles established in Shawhan v. Wherritt, 7 How. [48 U. S.] 627, the holder of a secret lien, under an unrecorded mortgage, can overreach the title of an assignee in bankruptcy, by recording his mortgage after he has knowledge of an act of bankruptcy committed by the mortgagor.

A decree will be entered in accordance with this opinion.

<hr/>

[2] [See U. S. v. Maillard, Case No. 15,709.]