ALBANY,
August, 1814.

JACKSON, *ex dem.* LIVINGSTON AND OTHERS, *against* DE LANCEY AND RUSSEL.

JACKSON
v.
DE LANCEY.

THIS was an action of ejectment for lands, in the town of *Plattekill*, in *Ulster* county, tried before Mr. Justice *Van Ness*, at the *Ulster* circuit, in *November*, 1812.

The plaintiff's counsel, in support of the title of the lessor, gave in evidence a lease of the premises in question, for 21 years, from *Nathan Miller* to *Andrew Gee*, dated the 1st of *March*, 1785; a lease from *Nathan Miller* to *Cornelius Gee* and *James Owen*, dated the 1st of *April*, 1802. In the last-mentioned lease, the premises are described as the " certain farms or tracts of land whereon the said *Cornelius Gee* and *James Owen* now live and occupy in the precinct of *Marlborough*, being the property of *William Alexander*, Earl of *Stirling*, but now in the care and possession of the said *Nathan Miller*."

It was proved, by *parol*, that *Nathan Miller* always declared and admitted the tract of land, about 1,000 acres, in his possession, of which the premises in question were a part, to be the property of Lord *Stirling*. It was also proved that *Catharine Neilson*, the wife of *William Neilson*, who were also lessors, was the daughter of Lord *Stirling*, and during the revolutionary

A., in 1770, being indebted to B. by three several bonds, in order to secure the payment of the same, executed to B a mortgage on all his lands within the province of New-York, part of which lands were referred to by name, and part, comprising the premises in question, passing under a general clause, and covenanted that on default the mortgagee, his heirs, &c. might enter. B. died, having directed by her will all her estate in certain patents and elsewhere, where whatsoever and whatsoever, to be turned into

money by her executors, and to be equally divided among her five children, who were to be *tenants in common in fee of the realty*, until such sale and distribution.

In 1771, before the death of B. the mortgage had become forfeited, and a judgment had also been recovered by B. against A., which was revived in 1775, and in 1788 was again revived by thee executors of B against the heirs and tertenants of A., and execution issued thereon, and the premises in question sold and conveyed to C., who had married one of the daughters and devisees of B., the validity of which conveyance, however, was questionable, and was not regarded as part of the defendants' title. Two other of the devisees of B. conveyed their share of the premises, thus purchased, to C. and in 1790 he took possession, and the tenants attorned to him.

In an action of ejectment, by persons claiming under A., it was held that the debt and mortgage passed by the general words in the will of B.; that C. must be deemed to have taken possession on behalf of the devisees, for the forfeiture of the mortgage, and that the attornment was valid.

That although the mortgage was forfeited as long ago as 1771, it was still outstanding, the presumption of payment being rebutted by the proceedings had to revive the judgment, (which judgment had been recovered on two of the bonds recited in the mortgage,) and the sale under the execution, notwithstanding these proceedings and that sale might have been defective; and that from 1771 to 1790, when C. took possession, after deducting the period of the revolutionary war, there had not been sufficient time on which to found a presumption, and that, consequently, the mortgage was a good outstanding title, and sufficient to protect the defendants' possession, independent of the sheriff's deed.

Words of general description, in a deed or mortgage of land, are sufficient to pass the grantor's estate; thus, a grant of lands in the patent of B., and of all other lands belonging to the grantor, in the province of *New-York*, will pass the residue of his lands in *New-York*.

But *it seems* that in a sheriff's deed the land must be defined.

A devise of the testator's *estate* generally passes both real and personal estate, and may include a debt and mortgage.

war married *William Duer*, Esq., who died in the spring of the year 1799.

The defendants then gave in evidence, as follows:

1. An exemplification of a judgment in favour of *Anne Waddell*, against *William Alexander*, Earl of *Stirling*, for 7,774 pounds, signed the 28th of *March*, 1771.

2. An exemplification of a judgment reviving the former judgment, in favour of the executors of *Anne Waddell*, against Lord *Stirling*, signed the 23d of *August*, 1775.

3. An exemplification of a judgment, reviving the same judgment, in favour of the executors of *Anne Waddell*, against the heirs and tertenants of Lord *Stirling*, signed the 7th of *May*, 1788, and a *scire facias*, directed to the sheriff of *New-York*.

4. An exemplification of a *test. fi. fa.* on the last-mentioned judgment, directed to the sheriff of *Ulster* county, tested the 30th of *April*, 1788, with the sheriff's return endorsed thereon, that he had levied and sold the land and tenements of *William Alexander*, Earl of *Stirling*, deceased, in his bailiwick, to the amount of one hundred pounds.

5. A deed for the same lands, dated the 10th of *June*, 1788, from the sheriff of *Ulster* to *John Taylor*. This deed recited the *test. fi. fa.*, sale at auction, &c. and conveyed to *Taylor*, as the highest bidder, a tract of land near the *Wallkill*, particularly described, containing 3,000 acres of land, and the equal moiety of several lots, particularly described in the *Hardenbergh* patent, the whole containing, by estimation, about 20,262 acres.

The premises in question are not particularly described, but are supposed to pass under the general description which follows the description of the tracts mentioned in the deed, as follows: " And, also, other the lands, tenements, and hereditaments whereof the said *William*, Earl of *Stirling*, was seised on the said 26th of *June*, 1771, or at any time afterwards, within the county of *Ulster*, whether held in severalty, or in common with others, and all the estate, right, title, &c. of the said *William*, Earl of *Stirling*, of, in, or to, the same."

*Anne Waddell* left five children, *William*, *Henry*, *Mary*, *Anne*, and *Sarah*. *Mary*, the eldest daughter, married *John Taylor*, *Anne* married *Eleazer Miller*, and after his death *John Taylor*, and *Sarah* married *Joseph Taylor*. *John Taylor* died in 1803

or 1804, and left six children, of whom *Anne De Lancey*, one of the defendants, is one. *William Waddell*, the eldest son of *Anne Waddell*, is still living, and resides in *England*.

6. The defendants then gave in evidence a mortgage from Lord *Stirling* to *Anne Waddell*, dated the 2d of *December*, 1770, reciting several debts due to her, to wit, by a bond executed by Lord *Stirling* and *Philip Livingston*, in 1763; a bond executed by Lord *Stirling* himself, in 1766, which was secured by a mortgage on a house, &c., dated the 2d of *December*, 1766; and, also, a bond bearing even date with the present mortgage, the whole amount of which debts were 5,043*l*. 16*s*. for further securing the payment of which, with the interest, he mortgaged "all and every those shares, lots, and parcels of land, and all other, the lands, tenements, and hereditaments and estate or estates whatsoever of the said *William*, Earl of *Stirling*, whereof he is seised in common, or separately and alone, in those several tracts of land called the patent of *Cheesecocks*, in *Orange* county, *Richbell's* patent, in the county of *West Chester*, in *Provoost's* patent, and *Minisink* patent, in the county of *Ulster*, and in *Hardenbergh* patent, in the counties of *Albany* and *Ulster*; and all other the lands, tenements, and hereditaments belonging to the said *William*, Earl of *Stirling*, within the province of *New-York*." By the proviso or condition, the mortgage was to be void on the payment of the sum of 5,043*l*. 16*s*. on or before the 2d of *December* then next, with interest, &c., and the mortgagor covenanted to pay the money, &c. and that the mortgagee and her heirs, &c. might at all times, after *default* made in the proviso, peaceably and quietly enter into, have, hold, occupy, possess, and enjoy the premises, without any let, &c. It was admitted that the premises in question were not included in any of the patents particularly mentioned in the mortgage, but Lord *Stirling* being seised of the premises in question, at the date of the mortgage, they were supposed to pass under the general clause contained therein.

7. A probate of the will of *Anne Waddell*, dated the 29th of *March*, 1773, in which she directs her executors "to collect, with all convenient speed, the one third part of the estate left her by her husband, and all the interest money since accrued, &c. and all outstanding debts of every kind, and this, with all the rest of my estate in *Hardenbergh* patent, and elsewhere,

whatsoever and wheresoever, shall be turned into money by my executors, and be equally distributed among my five children, share and share alike, who are to be tenants in common in fee of the realty, until such sale and distribution shall be made;" and the testatrix gives to each of her executors, 75 pounds for his trouble.

8. A deed from *Henry Waddell* to *John Taylor*, dated the 2d of *February*, 1788. A deed from *Eleazer Miller* and wife to *John Taylor*, dated the 21st of *February*, 1789.

9. A power of attorney, dated the 12th of *February*, 1789, to *Ichabod Williams*, executed by *Samuel Brunson*, as the attorney and agent of *John Taylor*, authorizing him to take possession of the tract of land of 1,000 acres, of which the premises in question are part, for *John Taylor*. And it was proved by a witness, who lived near the premises in question, that at the time the above-mentioned power of attorney was executed, *Russel*, one of the defendants, was in possession; that *Brunson, Nathan Miller, Russel*, and several more of the tenants on the same tract, were also there. *Brunson* acted as the agent of *Taylor*, and *Miller*, after some difficulty, agreed to give up the possession of the whole tract to *Brunson*; and all the tenants present, including *Russel*, the defendant, came in under *Taylor*, and have held under him ever since.

The defendants gave in evidence an agreement, dated 7th of *June*, 1791, and executed by the tenants, under their hands and seals, by which they acknowledge themselves to hold possession under *John Taylor*; and it was admitted on the part of the plaintiff, that from the date of that agreement, the lands have been held under *John Taylor* and his heirs.

The counsel for the plaintiff then produced and proved the last will and testament of *William* Earl of *Stirling*, dated the 29th of *January*, 1780, by which he gave all his real and personal estate to his wife *Sarah*; to her, her executors, administrators and assigns, and in case of her death, without giving, devising, or bequeathing by will, or otherwise selling or assigning the same, &c. then he devised to his daughter, Lady *Catharine Duer*, all such estate, and all such parts thereof, as shall remain undevised or unbequeathed by his wife.

At the request of the defendants' counsel, the plaintiff also produced the will of *Sarah Alexander*, widow of Lord *Stirling*, dated the 27th of *November*, 1804, by which, after giving some

legacies, she devised all the residue of her estate, real and personal, whatsoever, to *Brockholst Livingston* and *Mathew Clarkson*, as trustees of the several trusts expressed in the will.

A verdict was taken for the plaintiff, by consent, subject to the opinion of the court on the above case ; the written documents to be referred to on the argument.

The following points were raised by the counsel for the plaintiff :

1. That the proceedings to revive the judgment against the heirs and tertenants of Lord *Stirling* were void.

2. That the premises in question did not pass by the sheriff's deed to *John Taylor*.

3. That the attornment of *Miller* and *Russell* to *John Taylor* was void.

4. That the lessors are not barred by adverse possession.

5. That the mortgage by Lord *Stirling* to *Anne Waddell* cannot be set up as an outstanding title.

As the opinion of the court is chiefly confined to the validity of the title under the mortgage, it is not necessary to state particularly, the arguments of the counsel on the other points.

*T. A. Emmet*, (*J. Duer*, same side,) for the plaintiff. The mortgage was payable one year after its date, the 2d of *December*, 1771. From the lapse of time, therefore, the presumption is, that the debt was paid. It may, perhaps, be said that the judgment was on the bond, for the security of which the mortgage was given, and which judgment has been revived ; but the judgment and mortgage are for different sums ; and there is a difference also in the parties, one of the bonds being given by Lord *Stirling*, jointly with *Philip Livingston*. The revival, therefore, of the judgment does not repel the presumption that the mortgage has been paid.

Again, the mortgaged premises did not pass by the will of *Anne Waddell*. It is settled, that by the general words, " lands, tenements, and hereditaments" in a devise, a mortgage in fee, though forfeited, will not pass, if the testator has other property to which those words will apply.* A mortgage, though in name and appearance it would seem real estate, is, in reality, a mere pledge, and passes as personal property. On principle, a mortgage, where the mortgagee is out of possession, ought never to pass as real property. If it was a mere pledge, there was no

ALBANY,
August, 1814.

JACKSON
v.
DE LANCEY.

* *Vernon*, 621.
1 *Vernon*, 4.
1 *Atk* 605. 2
*Ch. Cas.* 51. 1
*Bro. P. C.*
228. *Powell on*
*Mortg.* 694. 698.
683 2 *Equ. Ca.*
*Ab.* 595. *Prec. in*
*Ch.* 11. 6 *Cruise*
*Dig.* 211. tit.
38. c. 10. s. 113.
115.

possession under it.    The children of Mrs. *Waddell* had no right to enter as *devisees;* nor can their conveyance of the property be operative.

Again, the testatrix directs that all the children shall hold as tenants in fee, until a sale by the executors.* Now *William Waddell,* her eldest son, never joined in the conveyance; the lessors, therefore, must recover one fifth part.

By the statute,† all attornments by tenants to strangers are declared void, unless made pursuant to some judgment at law or decree in equity, or with the privity or consent of the landlord or lessor, or to a mortgagee after the mortgage is forfeited. The attornment, then, should have been to the mortgagee, or to the legal representative of the mortgagee.  Now *William Waddell* was the heir at law of the mortgagee.

Nor was the attornment made with the consent of the landlord.  *Nathan Miller* was not the landlord; he was himself the tenant of Lord *Stirling.*  He was not the owner of the reversion or lord of the fee.    The recital in the deed of attornment shows that he did not pretend to be landlord.    It would be in fraud of the statute to allow a tenant to surrender a lease to a stranger, and then attorn to another and take a new lease.  The statute is remedial ; and should be liberally construed.

Unless the possession can be connected with the legal title under the mortgagee, there can be no adverse possession.   The possession here commenced in tenancy or in fraud.   Should it be said that it is enough if the party in possession claims title, though the title may be bad,‡ yet, still, the possession must be adverse from the beginning ; but a title commencing in tenancy cannot become adverse.

Again, here was a lease and possession under it, and Lord *Stirling,* or his heirs, had no title to the possession until after the lease had expired.    It is true, the lease would be forfeited by the attornment, yet the lessor is not bound to take advantage of a forfeiture.§

Again, Lady *Stirling* had a particular estate for life‖ in the premises, and, until the determination of that estate, there can be no adverse possession.**

It will, perhaps, be said, that the defendants have shown a title out of the lessor of the plaintiff, and that is enough.  But if the attornments to *John Taylor* were void, the title of the

* 1 Ch. Cases,
51. 2 Ch Cases,
29. 50. Powell
on Mortg 684
and 647.

† 1 V. L.
443. ruls. 36.
ch. 63. s. 28.

‡ 9 Johns.
Rep. 174.

§ 7 East, 321.

‖ 4 Term Rep.
448    5 Mass.
Rep 500.   10
Johns. Rep. 19.
** Jackson v.
Schoonmaker, 4
Johns. Rep. 390.

defendants is derived from the tenants, and they can take no
other or better title than such tenants possessed.

Though the case of *Barton* v. *Pegge**  has since been over-
ruled,† yet the principle there laid down by *Buller*, J.
has never been disturbed. He lays it down as clear law, that
a tenant cannot set up the title of a mortgagee against the
mortgagor, because he holds under the mortgage, and has ad-
mitted his title. This principle was recognised by this court,
in *Hitchcock* v. *Harrington*,‡ and *Collins* v. *Torry*.§ In the
last case, the court went even further, and would not allow a
stranger to defend his possession, by showing a subsisting mort-
gage by the lessor.

*I. Emott*, and *S. Jones*, jun. contra. We do not think it ne-
cessary, at present, to draw into discussion the validity of the
proceedings under the judgment, or of the sheriff's sale; nor
to inquire as to the precise nature of the estates derived by
Mrs. *Alexander*, or Mrs. *Duer*, under the will of Lord
*Stirling*.

The strong, and, as we contend, unanswerable objection to
the plaintiff's right of recovery is, that there is a subsisting and
outstanding forfeited mortgage by Lord *Stirling*, and which is
held by the defendants, which must be a complete shield and
defence to them, until the lessors of the plaintiff come in and re-
deem the mortgage.

There were three bonds of Lord *Stirling*, one of which
was already secured by a previous mortgage, and the mortgage
in question was a security for the two others, as well as the
first. The judgment was, no doubt, for the amount of those
two bonds. The premises in question are not included in the
parcels of land particularly described, but passed under the ge-
neral words. Such general description has been held good in
*England*. If a man bargains and sells all his lands in *D.*, all
his houses, woods, &c. will pass.‖

Here is a mortgage in fee, forfeited and outstanding, which
may be used by the tenant in possession, (though he cannot
connect himself with the mortgagee,) to defend that possession.**

But *John Taylor*, and the defendants under him, are, in fact,
connected with the mortgagee. The mortgagee died, leaving
five children. *Henry Waddell*, one of the heirs, conveyed to
*John Taylor*, the 2d of *February*, 1738. The sheriff's deed

ALBANY,
August, 1814.

JACKSON
v.
DE LANCEY.
* 1 Term Rep.
758—760. note.
† 2 Term Rep.
684.

‡ 6 Johns. Rep.
200.
§ 7 Johns. Rep.
278.

‖ 4 Co. 27 b.
Cro. Eliz. 476,
477. 2 Roll.
Ab. 49. 57.
Owen, 75. No. 1.
49. Cro. Eliz.
805. Perkins, 2.
114.
** 2 Term Rep.
684. 7 Term
Rep. 43—48.
5 East, 130.

was dated the 10th of *June*, 1788. *Taylor* entered under the title derived from the mortgagee, not under the sheriff's deed. The deed recites the mortgage, and conveys all the right, title, and interest of the grantor under it. Similar deeds were executed by two other children, so that *Taylor*, beside the right of his wife, held the rights of three of the heirs of the mortgagee.

If Mrs. *Waddell* had died without a will, her eldest son, *William*, would, as her heir at law, have taken all her estate; but as trustee to the executors, or persons entitled to the personal estate, who are all the children. If there had been no will nor debts, and the personal representatives had taken possession of the mortgaged premises, could the mortgagor turn them out of possession, merely because the heir at law had the *legal* estate?

But there is, in fact, a will, which establishes a connexion between the defendants and the mortgagee. The word *estate* is used by the devisor in its most extensive sense. She devises *all her estate* to her five children. This included the debt and mortgage of Lord *Stirling*. It was the manifest intention of Mrs. *W.* that her property should go to all her children equally, and not to the heir at law. A mortgage is an interest, or estate, capable of being devised; and if sufficient words of description are used, the land or subject pledged, as well as the money secured by it, will pass.*

Though the legal estate may have been in the heir at law, yet the children, being in possession, and having a *beneficial* interest, they may protect themselves by the mortgage. It makes no difference whether the interest is that of a *devisee,* or *cestui qui trust.*

It is said, the court will presume that the mortgage has been satisfied by the payment of the debt; but there is no such presumption, and no proof of payment has been shown or pretended. In regard to judgment debts, there can be no presumption of payment from lapse of time. The judgments are legal debts to this day.

Again, the leases of *Miller* were subsequent to the mortgage, and are, therefore, in regard to the mortgage, void.† It is unnecessary, therefore, to discuss the doctrine of attornment, for the persons in possession became tenants to the mort-

* *Powell on Mortg.* 433. 2 *P. Wms.* 198. *Co. Lit.* 203 *b.* and note 96.

† *Dougs.* 21. *Powell on Mortg.* 226.

gagee, and to the defendants claiming under her. But, in truth, the attornments were legal and valid.

Again, twenty-three years elapsed from the time *Taylor* took possession to the commencement of this suit. It is enough that he entered under colour of, or claiming title; for though it were a bad title, still the possession is adverse. He entered, not under Lord *Stirling*, but as owner; and on the faith of his having a good title, he' took the attornment of the tenants. It is said that the limitation will not run, because Mrs. *Alexander*, under the will of Lord *Stirling*, had a particular estate for life in the premises. But we contend, that under that will the wife of Lord *Stirling* took an estate in fee.*

* 9 *Johns. Rep.* 222. 10 *Johns. Rep.* 19.

*T. A. Emmet*, in reply, said the presumption against its being an unsatisfied mortgage, arising from the lapse of time, was strong; and the evidence to repel that presumption ought to be clear and satisfactory. The defendants cannot cover themselves with this mortgage. The heir at law is not a trustee to the children, but to the executors and administrators of the testatrix, who directs the whole of her estate to be sold and converted into money. This shows, most clearly, that she did not intend that her children should have any concern with the real estate, but merely to recover their shares of the proceeds in money. The general words of the will, will not pass an estate out of the possession of the devisor. The mortgage was intended to go as personal property to the executors, and to be collected by them among the debts.

YATES, J. delivered the opinion of the court. I do not think it necessary to examine into the correctness or legality of the proceedings to revive the judgment against the heirs and terte-nants of Lord *Stirling;* nor whether the premises passed by the sheriff's deed under that judgment, because the counsel for the defendants, on the argument, disavowed to claim under it.

The question, then, is as to the validity of the title under the mortgage given by Lord *Stirling* to *Anne Waddell.*

The general description in this mortgage is liable to no objection; a party conusant of his rights may sell or mortgage, by general description, though an officer must define what he sells.

It was stated, on the argument, that the proof of the will of *Anne Waddell* was insufficient, and ought not to have been received as evidence of title; it was read on the trial as a link in the defendants' title, without objection, which might otherwise have been obviated. It is now too late to make it. The will, therefore, for the purposes of this argument, must be considered as duly proved.

By this will, *Anne Waddell* directs her executors to collect, with all convenient speed, the one third part of the estate left her by her husband, and the interest money since accrued and due to her or to grow due, and all outstanding debts of every kind, and this, with all the rest of her estate in the *Hardenbergh* patent, and *elsewhere, whatsoever and wheresoever*, to be turned into money by them, and be equally distributed among her five children, share and share alike, who are to be tenants in common in fee of the severalty until such sale and distribution be made. The testatrix then gives 75*l.* to each executor for his trouble, &c.

The words, as used, are not particularly appropriated to the conveyance of real estate, but are applicable to both personal and real; it is all her estate whatsoever. (6 *Cruise*, 231. s. 113. 1 *Atk.* 605. *in note.* 2 *P. Wms.* 198. 8 *Term Rep.* 118. 8 *Ves.* jun. 417. 5 *Ves.* jun. 339.)

The term estate evidently applies to all kinds of an estate; the debt and mortgage, consequently, passed by this devise; and as to her real estate, the fee was intended to be vested in all her children, as tenants in common, until distribution made between them; so that it clearly appears never to have been the intention of the testatrix, that *William Waddell* should hold as trustee. If this is the true interpretation of the will, to whom ought the tenants to have attorned, but to the children of *Anne Waddell*, whose legal representative, *John Taylor*, was, as appears by the respective conveyances in evidence, at least sufficiently so, to give force and validity to the transaction. But admitting that the legal estate, created by the forfeiture of the mortgage, did not pass by the will, and that it descended to her eldest son, *William*, as heir at law, who in such case could hold it only as trustee for the executors, and, if no debts exist, (which, for aught that appears, is the fact in this instance,) for the other children. It then might well be questioned whether the possession has not been long enough to presume a deed from *William*, who has

slept on his rights since 1791; and the case of *England, ex dem. Syburn,* v. *Slade,* (4 *Term Rep.* 682.) will support this doctrine; but without enforcing this principle, there can be no doubt that *John Taylor* entered as well under the mortgage, as under the judgments upon all or some of the debts due by Lord *Stirling* to Mrs. *Waddell,* also secured by the mortgage. If, then, an attornment, after the mortgage became forfeited, is authorized by statute to a mortgagee, it is equally valid in this case, as the possession by *John Taylor* must be deemed to have been taken for all the heirs, who cannot be treated by the mortgagor as strangers, and be turned out of a possession, obtained under a mortgage thus held for their benefit, forfeited before such possession was taken, and evidently unsatisfied.

That possession was taken several years subsequent to the forfeiture cannot be denied. It was, in fact, forfeited previous to the revolutionary war, long before the date of *Ann Waddell's* will ; and the possession was taken subsequent to her death. To show that this is an outstanding mortgage, it is only necessary to advert to the documents and evidence before us; and although the proceedings to revive the judgments may be deemed insufficient in law, to support the sale under them, by the sheriff of *Ulster* county, yet they are evidence to show the conduct and understanding of the party, in relation to the debt, in order to rebut the presumption of payment, by lapse of time and acquiescence.

That such presumption cannot exist, in this case, is evident. The judgment obtained in *March,* 1771, must prevent it. But it is said that this judgment is not for the same debt, and, therefore, disconnected with the mortgage. This cannot be the case ; the contrary inference is irresistible. The circumstances in evidence will not admit of a doubt that the judgment is on two of the bonds recited in the mortgage, and that the debt is in fact the same. This alone ought, perhaps, to be deemed sufficient to repel the presumption of payment ; but it also appears that proceedings were had in 1775 and in 1788, to revive this judgment, and that, in 1790, *John Taylor* took possession of the premises, and the tenants attorned to him ; so that instead of acquiescence until this period, the greatest attention and vigilance are evinced. But without noticing the proceedings to revive the judgments, the lapse of time from the 2d of *December,* 1771, the period when the mortgage became due, to the 7th of *April,*

1790, the time *John Taylor* took possession, is not long enough to presume payment, and deducting the period of the war, from the 14th of *October*, 1775, to the 21st of *March*, 1785, which ought to be done as being conformable to the rule adopted in the statute of limitations, it is wholly insufficient. Subsequent to 1790, Mr. *Taylor*, as the claimant under the representatives of *Anne Waddell*, supposed himself secure in the possession of the property, if not on the ground of title under the sheriff's deeds, at all events under the mortgage, until it should be paid off, and he ought not now to be disturbed in it.

It might, perhaps, be insisted that the entry on the premises by Mr. *Taylor*, while in possession of the sheriff's deed, in 1790, was under colour of title; and that such entry was made by him as owner of the land, under a belief that the deed extinguished the equity of redemption; and that the premises having been thus adversely held by him and his heirs for upwards of twenty years, the remedy in this action is lost. To determine the character of this possession, involves a question as to the extent of the devise to Lady *Stirling*, contained in the will of Lord *Stirling*, whether it gave an estate for life or fee simple. Although, in my view, there can be little doubt as to the true construction of that devise, and, consequently, of the nature of the defendants' possession, the inquiry, in this instance, is rendered unnecessary by the conclusive evidence that the mortgage, under which they held the premises in question, is outstanding, and, of course, sufficient to protect them in this action. Without, therefore, giving an opinion as to the right of the lessors to redeem, which cannot be made a question here, we are of opinion, that the defendants are entitled to judgment.

Judgment for the defendants.