## CARPENTER vs. SCHERMERHORN and others.

Where a person having an interest in real estate is under a disability during her lifetime, by reason of coverture, which prevents her from bringing an ejectment, her heirs must bring their suit within ten years after her death.

If one of such heirs is also a feme covert at the death of her mother, that circumstance will not have the effect to extend the period within which ejectment must be brought. For the law does not allow successive disabilities in different persons, taking the same estate by devise or descent from each other.

Where a testator devised to each of his six children an equal undivided sixth part of his real estate for life, and after the decease of each child devised the same to the children of such child and to their heirs and assigns forever; *Held*, that the devise in remainder was not to such of the testator's grandchildren as should survive their parents, but that one-sixth of the estate in remainder was given to all the children of each child of the testator, as to a class; that each grandchild, the moment it came into existence, took a vested interest in the remainder, in fee, subject to open and let in after-born children; and that such of them as died leaving issue, transmitted that interest by descent to his or her issue, even in the lifetime of the tenant for life, as a vested remainder in fee. But that the parent from whose side the estate came was the heir at law of such of the grandchildren of the testator as had died without issue, after the death of the testator, and in the lifetime of such parent.

A voluntary partition, of the interests of several persons in lands, without warranty, will, as between such persons, only give to each one the rights and interest, either vested or contingent, which he and the others then have in the lands set off in severalty.

And a further interest in the land set off to others, which one of the parties afterwards acquires as the heir at law of some of his children who had a remainder in fee in the premises, not being either a vested or a contingent interest in him, at the time of the partition, but a mere chance of his succeeding to the same, as an heir at law of his children, does not enure to the benefit of the other parties to the partition in respect to the lands set off to them.

The provision of the statute, requiring suits by heirs or devisees, for the recovery of land, to be brought within ten years, applies where the person originally entitled to sue is under a disability when the right accrues, and dies before such disability terminates, and thus casts the same estate, by devise or descent, upon heirs or devisees; in which case the heirs or devisees must bring their suit within ten years after the right of action accrued to them.

The shares of infant defendants, in the proceeds of the sale of premises in a partition suit, ought not to be paid to their guardians ad litem; but should be brought into court, and invested, for the benefit of such infants.

A feme covert, not being bound by a covenant of warranty, contained in a deed executed by her and her husband, jointly, for the purpose of conveying land which the husband holds in right of his wife, such covenant will not operate by way of estoppel, so as to vest an interest subsequently acquired by her, in the grantee in the deed.

Carpenter *v.* Schermerhorn.

Where the master's report, in a partition suit, shows the actual interests of the seve-
ral parties in the premises, it is not necessary to send the report back to the master
to correct an erroneous estimate which he has made in relation to such interests;
but the error may be corrected by the decree.

Where several tenants in common of mere life estates in the premises held in com-
mon, made a partition, of such premises, by parol, and one of them afterwards
conveyed the lots set off to him, in such partition, in fee, with warranty, and
subsequent to such conveyance acquired an undivided interest in the remainder in
fee in the whole premises; *Held,* that his grantees of the part of the premises so
set off in severalty, were not entitled to the undivided share which their grantor
had thus acquired in those portions of the premises not embraced in their deed
from him.

THIS case came before the chancellor upon the master's
report, and amended report, in relation to the rights of the sev-
eral parties in a partition suit.    The premises, of which parti-
tion was sought, consisted of about one hundred and sixty acres
of land in the town of Charlton, in the county of Saratoga, of
which Ryer Schermerhorn was seised at the time of his death,
and of lots Nos. 64 and 65 in Glen's patent, of which he was
also seised at that time.    Ryer Schermerhorn died in 1793,
leaving six children, John, Rykert, Bartholomew, Jeremiah,
Garret, and Engletje the wife of Nicholas Schermerhorn, his
only heirs at law.    By his will, made in due form of law to pass
real estate, he devised to each of his said children an equal un-
divided sixth part of the premises in question, for life, and after
the decease of his children respectively he gave one-sixth part of
the said premises to the children of his son John, and one-sixth to
the children of each of his other five children and to their heirs
and assigns forever.    Immediately after the death of the testator,
his children caused the lands in Charlton to be divided into six
lots, described in exhibit A. annexed to the master's report, as lots
numbers 1, 2, 3, 4, 5 and 6, and took possession thereof in seve-
ralty, except that Rykert Schermerhorn took possession of two
of the said lots, and his brother Jeremiah took possession of no
part of the Charlton lands.    Lots Nos. 64 and 65 in Glen's
patent were then wild and uncultivated, and remained so at
the date of the master's report.

In that parol partition of the Charlton lands, lot number one
was allotted to and taken possession of by John Schermerhorn

in severalty, and previous to 1795 he conveyed the same in fee, with warranty, to John Campbell. And Campbell, and those who subsequently derived title under and through him, continued to possess and claim title to the whole of the said lot down to the time of the commencement of this suit; at which time W. L. Taylor was in possession of the said lot by virtue of divers mesne conveyances from and under Campbell. Lot No. 2, in that partition, was allotted to Rykert Schermerhorn; who in June, 1795, conveyed the same in fee to Jesse Conde, with warranty. And Conde, and those claiming under him, had also continued to possess and claim title to the same, under that conveyance, down to the time of the commencement of this suit; at which time Sarah Conde was in possession of a part of the said lot No. 2. And N. B. Jennies was then in possession of the residue thereof, by virtue of divers mesne conveyances from Jesse Conde. Lot No. 3, in that partition, was allotted to Bartholomew Schermerhorn, who in December, 1796, conveyed the same in fee, with warranty, to John Campbell. And Campbell, and those claiming under him, had also continued to possess and claim title to the same under that conveyance, down to the time of the commencement of this suit; at which time G. Matthews was in possession of the said lot, by virtue of divers mesne conveyances from and under Campbell. Lot No. 4, in that partition, was allotted to Garret Schermerhorn, and lot No. 5 to Engletje Schermerhorn; and they, together with the husband of Engletje, joined in a conveyance of both of those lots, in fee, to Melville Brown, with warranty. And Brown, and those claiming under him, had continued to possess and claim title to the same, under that conveyance, down to the time of the commencement of this suit; at which time G. Matthews was in possession of a part of one of the said lots, and J. Valentine and P. Hudson were in possession of different parcels of the residue of that lot, and of the other of the said two lots, by divers mesne conveyances from and under M. Brown.

In that partition, lot No. 6 was also allotted to Rykert Schermerhorn, who died about thirty-five years previous to the master's report, leaving two daughters who were then married

And before his death he and his two daughters, together with their husbands, conveyed the said lot in fee, with warranty, to J. R. Maxwell. And Maxwell and those claiming under him had continued to possess and claim the title to the same, under that conveyance, down to the time of the commencement of this suit; and at the date of the master's report, G. Gould was in possession of that lot by virtue of divers mesne conveyances from and under Maxwell.

John Schermerhorn, one of the sons of the testator, died about forty years before the date of the master's report, intestate and without issue. And the master decided and reported, that in consequence thereof, one-sixth of the remainder in fee in the premises of which partition was sought was undisposed of by the will, and descended to the six children of the testator, at the time of the death of the latter; and that the respective grantees of the six lots in Charlton, and those claiming under them, were entitled to hold that sixth of those several lots by adverse possession. Bartholomew Schermerhorn, another son of the testator, died in July, 1845, leaving eight children, and four grandchildren, the descendants of a deceased child; all of whom together became entitled, under the will of the testator, to the remainder in fee in one-sixth of the whole premises of which partition was sought; and that they were entitled to one-fifth of one-sixth of the two lots in Glen's patent, as heirs at law of Bartholomew Schermerhorn.

Jeremiah Schermerhorn, another son of the testator, died about 1836, leaving seven children, each of whom was entitled to one-seventh of one-sixth of the premises of which partition was sought, under the will of the testator; and to one-seventh of one-fifth of one-sixth of the two lots in Glen's patent, as heirs at law of their father. And Ryer J., one of those children, afterwards conveyed all his interest in the premises to W. Fuller. Maria and Helen, two others of the children, conveyed their interest in lots No. 1 and 2 in Charlton to the defendant Jennie; and Helen also conveyed to Hudson her interest in lot No. 5 in Charlton.

Engletje, the daughter of the testator, died in 1834, leaving

her daughter Elizabeth Carpenter, the complainant in this suit, and three other children; each of whom was entitled to one-fourth of one-sixth of all the premises of which partition was sought, as devisees under the will of their grandfather, and to one-fourth of one-fifth of one-sixth of the two lots in Glen's patent, as heirs at law of their mother. James N. and Mary Sager, two of those children, conveyed all their interests in the premises of which partition was sought, to H. Carpenter, the former husband of the complainant. Carpenter died in 1838, leaving six children, one of whom conveyed all his interest in the premises to the complainant; but as their father had not paid his purchase money to James N. Schermerhorn, the latter had a lien upon the interest which he conveyed to Carpenter, for such unpaid purchase money. Lawrence Schermerhorn, another of the children of Engletje, conveyed all his interest in the premises to D. Smith.

Rykert Schermerhorn, another of the children of the testator, died about thirty-five years previous to the master's report, leaving two daughters, Helena, wife of Nicholas Clute, and Mary, wife of Dow Clute; each of whom was entitled to one-half of one-sixth of all the premises of which partition was sought, except in lot No. 6 in Charlton, which they had conveyed to Maxwell, as devisees under the will of their grandfather, and also to one-half of one-fifth of one-sixth of the two lots in Glen's patent, as the heirs at law of their father. Helena and Nicholas Clute subsequently died, leaving nine children who were her heirs at law and entitled to so much of her interest in the premises as she had not parted with in her lifetime.

Garret Schermerhorn, the other son of the testator, was living at the date of the master's report. He had nine children; two of whom had died without issue, after the testator, leaving their father their only heir at law. John Schermerhorn, another of the children of Garret, had also died leaving two children his only heirs. Maria, another of the children of Garret, had conveyed her interest in the premises to S. A. Daggett and M. Putnam. Jacob G., another of the children of Garret, had conveyed all his interest in the premises to S. A. Daggett. And Aaron G.,

another of the children, conveyed all his interest in the premises to D. Buttolph; which interest, at the date of the master's report, was vested in the defendant John Fuller. The master also reported that there were some specific and other liens upon the shares of several of the parties in the premises. He likewise reported that the several parcels of the premises were so situated that the same could not be partitioned, and that a sale was necessary. The case was submitted for a final decree upon the pleadings and master's report.

*S. A. Daggett,* for the complainant.

*H. V. D. Van Epps,* for defendant G. Gould.

THE CHANCELLOR. The master has clearly mistaken the rights of the children of Garret Schermerhorn, and of those claiming under them, in relation both to the Charlton lands and to the two lots of land in Glen's patent. He is right in supposing that the present owners of the Charlton lands are entitled to hold, by adverse possession, the one-sixth of their several lots, which was undisposed of by the will of the testator in consequence of the death of his son John without issue. For, upon the death of John, forty years since, the remainder in fee in that one-sixth, became vested in his four surviving brothers and his sister, who had an immediate right to bring ejectments for the recovery of the same; except so far as the persons in possession were entitled to protection under their respective covenants of warranty, which gave to them a portion of the fee by way of estoppel. Although Engletje may have been married at that time, so as to protect her interest from being barred during the coverture, she died as early as 1834, and the lands were held adversely more than ten years after the descent to her heirs. And the statute requires the heirs of the person as to whom a disability has existed, to bring their suit within ten years after the death of such person. (1 *R. L. of* 1813, *p.* 185, § 3.) It is true, the complainant, and perhaps the other daughter of Engletje, may have been femes covert at the death of their

mother, in 1834. But the law does not allow successive disabilities in different persons taking the same estate by devise or descent from each other. (*Doe* v. *Jesson,* 6 *East,* 80. 2 *Preston on Abs.* 341.)

The master appears to have proceeded upon the presumption that the surviving children of Garret Schermerhorn, were heirs to those who died without issue in the lifetime of their father. The devise of the remainder in this case, however, is not to such of the testator's grandchildren as shall survive their parents; but one-sixth of the estate in remainder is given to all the children of each child of the testator as a class. Each grandchild, therefore, the moment it came into existence, took a vested interest in the remainder in fee; subject to open and let in after-born children. And such of them as died leaving issue, transmitted that interest by descent to his or her issue, even in the lifetime of the tenant for life, as a vested remainder in fee. The parent from whose side the estate came, however, was the heir at law of such of the grandchildren of the testator as had died without issue in the lifetime of such parent. In relation to five of the children of the testator, it does not appear that they had any children who died without issue in the lifetime of their parents. The master has therefore properly considered those who survived their parents, or who died leaving issue, as entitled to the whole estate. But in relation to Garret, who is still living, and who is probably so far advanced in life that he can have no other children, it distinctly appears that he had two children who arrived to full age, and afterwards died without issue. And as they did not convey their interest in the one-sixth of the remainder in fee to any one, during their lives, it descended to their father, as their heir at law, under our statute of descents. Garret Schermerhorn, therefore, upon the death of those two children, became seised of two-ninths of one-sixth of the remainder in fee in the whole premises, as the heir at law of those two children. And as he had conveyed lot number four which was allotted to him, and also lot number five, allotted to his sister Engletje, with warranty, his interest in fee in two-ninths of one sixth of those two lots in Charlton passed, by es-

Carpenter *v.* Schermerhorn.

toppel, to those who have derived title to the different portions of those two lots under that conveyance. He is also entitled to the remainder in fee in two-ninths of one-sixth of each of the other four Charlton lots, and to the two lots in Glen's patent, as the heir at law of those two children; and to the fee in one-fifth of one-sixth of the two last mentioned lots, as one of the heirs at law of his brother John. And he is entitled to a life estate in seven-ninths of one-sixth of the two last mentioned lots, the remainder in fee in which seven-ninths of one-sixth, subject to such life estate alone, belongs to his other children, or those who have acquired their interests therein. His life estate also continues in seven-ninths of one-sixth of the four lots in Charlton not embraced in his deed to Melville Brown. But by virtue of the parol partition, and the subsequent adverse possession of those four lots, the persons who derived title to the same under the conveyances from his brothers are entitled to the whole of his life estate in their respective lots. It must be ascertained and paid to them accordingly, in the distribution of the proceeds of those several lots. And the other seven children of Garret, or those who now represent their interests in the premises of which partition is sought, instead of being entitled to the share stated in the master's report, are only entitled, under the will of the testator, to seven-ninths of one-sixth of the several lots of which partition is sought, including the two lots in Glen's patent. Those interests are also subject to the life estate which Garret Schermerhorn still has therein, under the will of his father.

As the rights of these several parties appear upon the face of the master's report, it is not necessary to send that report back to the master to correct the erroneous estimate which he has made of their several interests in the premises, but that part of the report may be corrected in the decree.

The counsel for Gould insists that Garret Schermerhorn's two-ninths of one-sixth of the reversion, in the four Charlton lots which were allotted to his brothers in the parol partition, belong to those who have derived title to those lots under the conveyances in fee from those brothers. This would be so if

Garret Schermerhorn had been the owner of either a vested or a contingent interest in that two-ninths of one-sixth of those lots at the time of the parol partition; or if he had conveyed the one-sixth of those lots to his brothers with warranty; or if it appeared that it was an interest which had been cast upon him by descent more than twenty years since, so that his right to the same was barred by the statute of limitations. But a mere parol partition of the interests of the children of the testator in the Charlton lands, could only, as between those children, give to each the rights and interest which the others then had in the lands set off in severalty, either vested or contingent. And, at the time of that partition, the interest which Garret has subsequently acquired, as the heir at law of two of his children, was not a vested or contingent interest in him; but the chance of his succeeding to the same, as the heir at law of his children, was a mere possibility, unaccompanied by any interest whatever in the premises. Again; there does not appear to be any equity in favor of those who have derived title to those lots under his brothers, as against him. As he acquired no interest whatever in the remainders in fee in his own lot, by that parol partition, as against the remaindermen to whom such remainders were devised, he is bound at law, as well as in equity, to protect the grantee of his own lot, and those claiming under that grantee, against the claim of those remaindermen. And if any persons had an equitable lien upon his two-ninths of one-sixth of the four lots in Charlton allotted to his brothers, it would be those who have become entitled to the other two lots under his conveyance with warranty. I do not see, however, that his conveyance of two lots, with warranty, gave, even to his grantee, an equitable lien upon the title which he afterwards acquired in the other four lots as heir at law of two of his children. Their claims are against him personally, under his covenant of warranty. The decree must, therefore, declare that he is entitled to two-ninths of one-sixth of the remainder in fee in each of those four lots, subject to an estate for his life in those two-ninths; which estate for life belongs to those who have derived title to the several portions of those four lots

under the conveyances from his brothers, John, Bartholomew, and Rykert.

The counsel for Gould also claims that the grantees of the Charlton lots, under the conveyances from the testator's children, are entitled to the interest of the children of Engletje in the Charlton lands, upon the ground that their claims are barred by the statute of limitations ; they not having been made within ten years after the death of their mother. He has, however, entirely mistaken the law on the subject; for the limitation, as to them, is a limitation of twenty years, and not of ten. The ten years' limitation applies where the person entitled to sue for the recovery of lands is under a disability when the right accrues, and dies before such disability terminates, and thus casts the same estate, by devise or descent, upon heirs or devisees ; in which case the heirs or devisees must bring their suit within ten years after the right of action accrued to them. But in this case, the children and descendants of Engletje do not claim title to the premises in question as the heirs at law of their mother. They are claiming a separate and distinct estate from hers, as the devisees of her father. And as a right in possession, to the estate in remainder, did not accrue to them until the death of their mother, in 1834, each of them had a right to bring his or her suit within twenty years from that time.

The interests of the several parties do not appear to be the same in either of the seven parcels of the Charlton lands described in exhibit B. annexed to the master's report. And the interests of the parties in the two lots in Glen's patent are also different from those in either of the seven parcels described in that exhibit. The decree must therefore describe the interest of each party in these several eight parcels of land, the two lots in Glen's patent being considered as one parcel, and stating the general and specific liens or incumbrances on the interest of any of the parties in all or any of such parcels. Each of the eight parcels must then be sold separately ; subject to such taxes and assessments as may have been imposed thereon—each lot in Glen's patent being sold by itself. The costs of all parties entitled to costs. including the master's fees and expenses of the sale, must then

be charged upon the proceeds of the eight parcels in proportion to the amount of the proceeds of each parcel. The master must then calculate the value of the life estate of Garret Schermerhorn in the one-sixth of the residue or net proceeds of each parcel of the Charlton lands, and pay the same to those who are now entitled to his life estate in the several parcels of such Charlton lands; deducting the same from the respective shares of his children, or their representatives, whose interests are subject to such life estate. And the value of his life estate in the net proceeds of seven-ninths of one-sixth of the two Glen's patent lots must also be computed, upon the principle of life annuities, and paid to himself; the same being deducted from the shares of his children, or their representatives, whose interests in those lots are subject to his life estate therein.

The shares of the proceeds belonging to the infant defendants are not to be paid to their guardians ad litem, as provided for in the draft of the decree presented; but they must be brought into court by the master, and paid to the clerk of the court of appeals, to be invested for their benefit.

The equitable lien of James N. Schermerhorn, for the purchase money, is not upon the whole of the share of which H. Carpenter died seised, but only upon the half of that share which belonged to James N. at the time of the execution of the conveyance from him and his sister for both of their shares. The amount due him for such purchase money must, therefore, be paid him out of the net proceeds of the half of the share of the premises of which H. Carpenter died seised, after deducting the costs and expenses properly chargeable thereon. And the rights of the parties must be declared, and provided for accordingly, in the decree. The dower of the complainant, in the net proceeds of the half of the share of which her husband died seised must be computed only upon the balance of such proceeds after deducting the amount of such equitable lien. For her dower interest, as well as the interests of her children in that part of the premises which came to H. Carpenter from James N. Schermerhorn, is subject to the equitable lien of the latter for his unpaid purchase money

As the taxes and assessments upon the several pieces of land must necessarily be different, and there are probably none upon the Charlton lands, which have been actually occupied and claimed in fee for nearly fifty years, the parties who are interested in those lands alone ought not to be subjected to the expense of ascertaining and paying the taxes on the lands in Glen's patent, in which lands they have no interest. I have, therefore, directed that each piece of land shall be sold subject to the lien of any tax or assessment which may be found to be chargeable thereon. And as the interests of many of the parties in the proceeds will be very minute, it would subject them to unnecessary expense hereafter to obtain their shares of such proceeds if the premises were sold on credit, and the securities taken on such sales brought into court for future distribution. The decree must, therefore, direct the several parcels to be sold for cash; so that the proceeds thereof may be apportioned and distributed by the master, without further expense.

The defendant Garret Schermerhorn, by virtue of his covenants in the deed to Melville Brown, is liable to the several persons who have derived title under Brown, for the loss of such portions of their several lots as by this partition suit are ascertained to belong to others, as well as for their shares of the costs to which they have been subjected by this suit. And the children of Bartholomew and Rykert Schermerhorn, as the heirs at law of their respective parents, having taken an interest by descent in the two lots in Glen's patent, in addition to their interests therein under the will of their grandfather, they are, as such heirs at law, liable upon the covenants of warranty in the deeds of their respective parents, and of their uncle John, to the extent of the interests which have come to them by descent. Even the children of Jeremiah and of Engletje, although the former gave no covenant of warranty, and the latter, being a feme covert, was not bound by her covenant, are still liable, to a certain extent, under the covenant of warranty of their uncle John. For they have taken by descent from their parents, interests in the two lots in Glen's patent, which interests came to their

parents as heirs at law of John Schermerhorn. The children of Engletje, although she was not bound by her covenant in the deed to Brown, may also be liable upon the covenants of their father, in the same deed, if they took any real estate by devise or descent from him. To protect the future rights of the parties claiming under or through such covenants, therefore, the decree must contain a provision that it is to be without prejudice to the rights of any of the parties in this suit, as against any of the other parties, or as against any other person, by reason or on account of any breach of warranty in any deed or conveyance of the premises of which partition is made in this suit, or of any part or parcel thereof.