## RANDALL *a.* RAAB.

*Supreme Court, First District; General Term, December,* 1855.

### STATUTE OF LIMITATIONS.

When disseisin takes place after descent cast, but during the existence of some particular estate which intervenes and prevents any right of entry on the part of the reversioner until the determination of that particular estate, the statute of limitations does not begin to run against the reversioner until such outstanding particular estate is determined. In such case the reversioner and the remainder man each have twenty years after the commencement of their right of entry, to bring suit.

Where the fee vests in one then under disability, the right of immediate entry commences upon the vesting of the fee, but as the one in whom it vests is under disability, the law gives ten years in which to sue.

Ejectment will not lie against a mortgagee in possession under the mortgage after default, to recover the premises, before redemption under the mortgage.

Appeal from a judgment rendered upon trial by the court without a jury.

This was an action brought by Collover Randall and Sophia his wife, against John Raab, to recover a lot of land in Essex-street, in the city of New York. The answer set up the statute of limitations, and averred title in the defendant.

The cause was tried May 19, 1854, before Mitchell, J., without a jury. The following facts were admitted and found.

That the premises in question were formerly owned by Peter Collyer.

That Peter Collyer, in 1804, made a will, devising the lot in question to his daughter, Catharine.

That, in 1804 he died, leaving the following children :— Charles, James, Peter, Eve, wife of John Provoost, Jane, wife of William Van Cott, Margaret, wife of George Tiebout, and Catharine, wife of John D. Provoost.

That Catharine and her husband immediately took possession of the lot in question, claiming to hold it in fee, by virtue of the devise, and on May 10, 1805, the widow and other children of Peter Collyer, joined in conveying the lot to Catharine.

That on June 14, 1809, Catharine being still in possession, she, with her husband, mortgaged the lot to Ezekiel Bishop.

That Catharine died in 1809 or 1810, leaving her husband and five children of that marriage, Margaret, Catharine, Eliza, Sophia, and Peter, surviving her; after which her husband, John D. Provoost, continued in possession until about September 4, 1815.

That, in 1815, Bishop foreclosed the mortgage, making John D. Provoost sole defendant; and the lot was bought in by Bishop at the sale, and conveyed to him by the master.

That Bishop thereupon took possession of the lot, and subsequently conveyed to Ackley, who subsequently conveyed to Nelson, whose heir held the lot, claiming it in fee, down to January 22, 1850, when the premises were sold under a decree, (to which neither of the present plaintiffs were parties,) to the present defendant, John Raab ; and they were subsequently conveyed to and held by him thereafter.

That John D. Provoost died in 1841.

That Sophia, daughter of John D. and Catharine Provoost, married Collover Randall, she and her husband being the plaintiffs.

The conclusion of law drawn by the court from these facts was, that the plaintiffs could not recover, because the defendant was in possession of the premises either under a mortgage which was not shown to be paid, nor as to which was any tender of payment shown, or as the lawful owner in fee of the premises.

Randall *a.* Raab.

The defendant entered judgment for his costs, from which the plaintiffs now appealed.

*John Townshend*, for appellant.—I. The plaintiffs were seized in fee. 1. The mortgage by Catharine Provoost and her husband created only a lien, it did not divest the fee, and on the death of said Catharine, the fee descended to her heirs, *inter al.*, the female plaintiff. (Raynor *v.* Wilson, 6 *Hill*, 469 ; Astor *v.* Hoyt, 5 *Wend.*, 603 ; Jackson *v.* Meyers, 11 *Wend.*, 533 ; Southworth *v.* Van Pelt, 3 *Barb.*, 349 ; Calkins *v.* Calkins, *Ib.*, 312 ; Fort *v.* Gooding, 6 *Ib.*, 60, which questions Phyfe *v.* Riley, 15 *Wend.*, 248 ; Runyon *v.* Mersereau, 11 *Johns. R.*, 534 ; Jackson *v.* Bronson, 19 *Johns. R.*, 325 ; Dickerson *v.* Jackson, 6 *Cow.*, 149 ; Peterson *v.* Clark, 15 *Johns. R.*, 205, cited and approved in Van Pelt *v.* McGraw, 4 *Comst.*, 112 ; Farmers' Loan Co. *v.* Edwards, 26 *Wend.*, 555 ; Clark *v.* Beach, 6 *Conn. R.*, 144 ; Godfrey *v.* Caldwell, 2 *Calif. R.*, 492 ; Gardner *v.* Heart, 3 *Den.*, 233 ; Jackson *v.* Welland Canal, 4 *Johns. R.*, 43 ; Van Duyne *v.* Thayer, 14 *Wend.*, 236, is opposed to King *v.* Merchants' Exchange Co., 1 *Seld.*, 557.) 2. The decree of foreclosure operated *only* on the estate of the tenant by the curtesy. It did not affect the owners in fee, they not being parties. (Bromet *v.* Moore, 9 *Hare*, 374 ; 12 *Eng. L. & E. R.*, 241).

II. The plaintiffs had the right of immediate possession. 1. Bishop did not enter with the assent of the plaintiffs, but *solely* as purchaser under the foreclosure decree, his right ceased with the life of the tenant by the curtesy, and after that event *he* could not nor could his assignee defend their possession by virtue of the mortgage. (Edwards *v.* Farmers' Insurance Co., 26 *Wend.*, 487 ; Watson *v.* Spencer, 20 *Wend.*, 260 ; Ash *v.* Dawnay, 16 *Eng. L. & E. R.*, 501 ; Rowley *v.* Rice, 11 *Metc.*, 338, and see 12 *Ib.*, 279 ; *Story, Eq. Jur.* § 1028, *a*; Brewster *v.* Striker, 2 *Comst.*, 40.) 2. If Bishop had a right of lien, it was lost when he conveyed the premises, without assigning the mortgage. (Edwards *v.* Farmers' Insurance Co., 26 *Wend.*, 491 ; Wilson *v.* Trout, 2 *Cow.*, 230 ; Post *v.* Arnot, 2 *Den.*, 344 ; Urquhart *v.* McIver, 4 *Johns. R.*, 115 ; Walther *v.* Wetmore, 1 *Smith's C. P. R.*, 24 ; Wing *v.* Griffin, 1 *Smith*, 162 ; Jackson

*v.* Bronson, 19 *Johns. R.*, 325; McFarland *v.* Wheeler, 26 *Wend.*, 467.)

III. No tender of payment or payment of the mortgage was necessary to entitle the plaintiffs to maintain the action. 1. The mortgage was satisfied by the foreclosure and sale. (People *v.* Beebe, 1 *Barb.*, 388). 2. The defendant by setting up a title in fee, instead of insisting on the lien, waived the necessity of a tender. (*Story on Bailments*, § 439; Dirks *v.* Richards, 5 *Scott, N. R.*, 534; 1 *C. & M.*, 626; Gurr *v.* Cuthbert, 12 *Law J. N. S.*, 309 *Ex.*; Wild *v.* Harris, 18 *Ib.*, 297, *C. P.*; Wallace *v.* Warren, *Ib.*, 449, *Ex.*; Cooper *v.* Willomatt 9 *Jur.*, 598; Scarfe *v.* Morgan, 4 *Mee. & W.*, 270; White *v.* Ganier, 2 *Bing.*, 23; Boardman *v.* Sil, 1 *Camp.*, 410; Everett *v.* Coffin, 6 *Wend.*, 608; Piquett *v.* McKay, 2 *Blackf.*, 465; Frankland *v.* Lovelock, 10 *Jur.*, 246; Short *v.* Stone, *Ib.*, 245; Jones *v.* Judd, 4 *Comst.*, 413; Young *v.* Hunter, 2 *Seld.*, 207; Gilbert *v.* Danforth, *Ib.*, 596). 3. The existence of the lien would not warrant a judgment for the defendant (Code, § 274).

IV. The defendant not having set up the lien in his answer, could not insist upon it on the trial. (Code, § 252; Brazil *v.* Isham, 2 *Kern.*, 9; S. C., 1 *Smith's C. P. R.*, 506; Farmers' Loan Co. *v.* Edwards, 26 *Wend.*, 555; White *v.* Shettigue, 13 *Mees. & W.*, 603; Dewey *v.* Hoag, 15 *Barb.* 365; Corning *v.* Corning, 2 *Seld.*, 97; Stuart *v.* Farmers' Bank, 19 *Johns.*, 506; Field *v.* Mayor of New York, 2 *Seld.*, 179; Jackson *v.* Whedon, 1 *Smith's C. P. R.*, 142; Walther *v.* Wetmore, *Ib.*, 24; Catlin *v.* Gunter, 1 *Duer*, 265; Garvey *v.* Fowler, 4 *Sand.*, 667; Houghton *v.* Townsend, 8 *How. Pr. R.*, 443; Edson *v.* Dellage, *Ib.*, 274; Sinclair *v.* Jackson, 8 *Cow.*, 543; Dobson *v.* Pearce, 1 *Abbotts' Pr. R.* 97; S. C., 2 *Kern.*, 165).

*A. L. Jordan*, for respondent.—I. Catharine, the daughter of Peter Collyer (wife of John D. Provoost), took an estate for her life in the lot in question, under the will of Peter Collyer; and subsequently an estate in fee, under the deed from the widow and children of the said Peter Collyer, (4 *Cruise on Real Property*).

II. By the marriage of Catharine with John D. Provoost (and the birth of issue), the latter became seized, as of free-

Randall *a.* Raab.

hold, of a life estate, as tenant by curtesy. (*Kent's Com.*, 4 *ed.*, 28).

III. The mortgage by Catharine and her husband, bound the life estate of the latter and the fee of the former.

IV. On the death of Catharine, in 1809 or 1810, the fee descended to her children and heirs at law, subject to the mortgage; and the life estate by the curtesy vested in possession in her husband, also subject to the mortgage.

V. The foreclosure against John D. Provoost, as sole defendant, and the sale under that foreclosure to Ezekiel Bishop, at the least vested in Bishop, an estate for the life of the said John D. Provoost.

VI. Bishop (or Nelson, who had succeeded to his rights) on the death of John D. Provoost, in 1841, being in possession, became and was seized in fee, as mortgagee in possession, under the mortgage of Catharine.

VII. Ejectment will not lie against a mortgagee in possession, and the conclusion of law and judgment of the court were, therefore, correct and proper. (Phyfe *v.* Riley, 15 *Wend.*, 248, and cases cited).

VIII. The action is barred by the statute of limitations; more than twenty years, (to wit, thirty-seven years) having elapsed since the purchase, by Bishop, under the foreclosure sale, and since he, Bishop, first claimed to hold adversely in his own right; and more than ten years having elapsed since the death of John D. Provoost, the tenant for life by the curtesy. Twenty years is a bar when there is no legal impediment to the prosecution, and when there is an impediment at and after the lapse of twenty years, ten years additional only are allowed after the impediment is removed. (Jackson, *ex dem.* Connor *v.* Caines, 21 *Johns.*, 301; Moore *v.* Jackson, 4 *Wend.*, 63; Jackson *v.* Johnson, 5 *Cow.*, 74; Jackson *v.* Moore, 6 *Ib.*, 727; Lafrombie *v.* Jackson, 8 *Ib.*, 589.)

Cowles, J.—I am unable to see how the Statute of Limitations can operate to bar this action.

Mrs. John D. Provoost was the ancestor through whom these plaintiffs claim. She died seized of the premises in 1810, leaving her surviving her husband and several children. John

Randall *a*. Raab.

D. Provoost, the husband, was tenant by the curtesy consummate upon her death, which particular life estate continued in existence until his death in 1841.

It was during the existence of this life estate that the disseisin under which the defendant sets up his adverse title, took place by the entry of Bishop, or at least by his assumed conveyance in fee to Ackley, in 1815. When that disseisin took place, the heirs of Mrs. Provoost held only the reversion subject to the determination of the life estate. From 1810, when their mother, Mrs. Provoost, died, including the time of the disseisin in 1815, down to 1841, when John D. Provoost himself died, there was no time when the heirs of Mrs. Provoost possessed any right of entry upon the premises, or ability to bring ejectment.

The disseisin took place after the reversion had vested, but during the existence of the tenancy by the curtesy.

When disseisin takes place after descent cast but during the existence of some particular estate, which intervenes and prevents any *right of entry* on the part of the reversioner until the determination of that particular estate, I do not understand that the statute of limitations begins to run against the reversioner until such outstanding particular estate is determined. In such cases the reversioner and the remainderman each have twenty years after the determination of such particular estate, or in other words, twenty years *after the commencement of their right of entry*, to bring suit.

This is not the case when the fee vests, but on first vesting finds the one in whom it vests under disability by reason of infancy, coverture, &c. (*Code*, § 88.) In that class of cases, the right of *immediate entry* commences *eo instanti* the vesting of the fee—but as the one in whom it vests is under disability to sue, the law gives ten years after disability removed in which to prosecute. (Jackson *v.* Sellick, 8 *Johns.*, 262; Jackson *v.* Johnson, 5 *Cow.*, 74; Moore *v.* Jackson, 4 *Wend.*, 58; Carpenter *v.* Schermerhorn, 2 *Barb. Ch. Rep.*, 314).

But in cases where the particular estate exists when the disseisin takes place, and the reversion has also vested before the disseisin, there the statute will not begin to run against the reversioner or remainderman until the determination of the

particular estate. And the reason is both obvious and just— for there has been no time when any one except the particular estate man had a *right of entry* against the *disseisor* so long *as such particular estate was outstanding.* The laches of the life estate man shall not be charged in such cases to the reversioner or remainderman, for neither he nor any ancestor or predecessor whom he represents, or under whom he takes, has, until the particular estate was determined, *possessed any right to enter* or *bring suit.* (Jackson *v.* Schermerhorn, 4 *Johns.,* 390 ; Jackson *v.* Johnson, *supra*). Although on the death of Mrs. Provoost the *reversion* was *cast upon her heirs*, yet *no right of entry* descended until the tenancy by the curtesy terminated, in other words there was no *seisin* in them until that event took place. (Jackson *v.* Sellick, *supra.*)

Had this disseisin taken place *during the lifetime of Mrs. John D. Provoost*, plaintiff's ancestor, and after the estate *had vested in her*, then, as the *right of immediate entry* would have existed in her, the statute would have begun to run both against her and her heirs; but as she was under coverture at the time her estate vested, the law would also, in that case, have given her ten years after disability removed in which to sue, and she dying before her husband, her heirs would also have had ten years after termination of her husband's tenancy by the curtesy in which to sue. But that is not the case here. The disseisin took place when no one but the life estate man possessed any right of entry, and therefore these plaintiffs had twenty years from the time *their right of entry first accrued* (which was in 1841) within which to enter or bring ejectment.

But on the other branch of the case this suit must fail.

It is not shown or claimed on the part of the plaintiffs, that the moneys secured by the mortgage given by John D. Provoost and wife to Bishop, and which became due in 1810, have ever been paid, or were all raised by the foreclosure sale in 1815.

Bishop therefore is to be regarded as a mortgagee acquiring possession by and entering under his mortgage after default in the payment of the same. In 1815 he could, after such default, have acquired possession by ejectment, although such remedy is now abolished. (2 *Rev. Stats.,* 312, § 57).

Bishop's rights, however, as mortgagee in possession after

Randall a. Raab.

default, had all accrued before, and were not divested by, the adoption of the Revised Statutes, and having thus acquired possession, he was authorized by law to protect himself in possession under his mortgage until the whole moneys thereby secured were paid, or the time for redeeming had passed. (Van Duzen *v.* Thayer, 14 *Wend.*, 233; Phyfe *v.* Riley, 15 *Wend.*, 248.)

It is unnecessary to discuss the question raised in Fort *v.* Burch, (6 *Barb.*, 248), by Paige, J., whether a mortgagee acquiring possession since the Revised Statutes, can protect his possession under his mortgage after default. It is enough for all the purposes of this suit that in 1815 Bishop could, and that too whether he entered by consent or under claim of title. (Van Duzen *v.* Thayer, 14 *Wend.*, 233.)

This right to hold, which vested in Bishop, has passed by his grant to those who hold under him. (Jackson *v.* Winckler, 10 *Johns.*, 480; Jackson *v.* Delancey, 11 *Johns.*, 365; 13 *Johns.*, 537; Jackson *v.* Bowen, 7 *Cow.*, 13).

The character of his title was that of an absolute and unqualified right to the possession of the premises, and the enjoyment of the rents, issues, and profits *forever*, subject to be defeated by a decree for redemption under the mortgage. Such an interest is an estate in the land. It is in effect a defeasible fee—a fee subject to be defeated by a redemption only.

Surely such an estate is the subject of sale, and passed under the successive grants from Bishop to the defendant who claims under him. Three successive grants have also carried to the defendant the mortgage itself, as one of the incidents or muniments of his title. (Jackson *v.* Bowen, 7 *Cow.*, 13).

Ejectment to recover the premises before redemption under the mortgage will not lie. This being conclusive of the case, it is unnecessary to discuss the other questions raised on the argument. The judgment below must be affirmed with costs.\*

---

\* Mr. Townshend subsequently moved, in this case, at General Term, February, 1856, for an order that the appeal be re-argued, on the ground that the opinion showed the judge who pronounced it was laboring under the error of supposing this to be an action of ejectment, and subject to the rules which governed that action. That the opinion " gave the major premise and conclusion of a syllogism of which the *suppressed* premises must be 'this is an action of ejectment,' and as that was manifestly false, the conclusion was necessarily false." The motion was denied.